BEHLMER v. LOUISVILLE & N. R. CO. et al.

(Circuit Court, D. South Carolina. January 22, 1896.)

1. INTERSTATE COMMERCE ACT—ORDERS OF COMMISSION—ON WHOM BINDING.

Proceedings were commenced before the interstate commerce commission against the S. Ry. Co., which was at the time in the hands of a receiver, to enforce compliance with the long and short haul clause of the interstate commerce act. Before the decision therein, the railroad was sold under foreclosure, and conveyed and delivered to the purchasers. An order was made by the commission requiring a reduction of rates. A few days after this order was made, the railroad was conveyed by the purchasers at the sale to a new company. The order was served on the former receiver of the road, but not on the new company. *Held,* that such new company was not bound by the order, notwithstanding a provision in the order of sale of the road requiring the purchaser to pay and discharge all claims made against the receiver, and all obligations contracted or incurred by him and not paid by him before the delivery of possession.

2. SAME—LONG AND SHORT HAUL—DIVISION OF JOINT RATE.

Several independent, connecting railroads, forming a line from Memphis, Tenn., to Charleston, S. C., agreed upon a charge of 19 cents for certain freight between those points, which sum was to be divided between them in certain proportions. Upon the same freight, from Memphis to S., a point in South Carolina, but nearer Memphis, 28 cents was charged, the excess over the through rate all going, however, to the road which performed the transportation in South Carolina, and the other roads receiving only their proportion of the through rate. *Held,* that such charge was not a violation, on the part of such other roads, of the long and short haul clause of the interstate commerce act.

3. SAME—SIMILAR CIRCUMSTANCES.

Transportation of hay between Memphis, Tenn., and Charleston, S. C., between which points there is competitive transportation by rail, by water and rail, and by water alone, is not performed under substantially similar conditions with transportation between Memphis and an interior town in South Carolina, which is reached only by one railroad.

C. B. Northrop, for petitioner.

J. W. Barnwell and Ed. Baxter, for defendants.

SIMONTON, Circuit Judge. This is a proceeding in equity brought to enforce a finding of the interstate commerce commission, under section 5 of the act to amend an act to regulate commerce, approved March 2, 1889. 25 Stat. 855. This section 5 amends section 16 of the amended act, which was approved 4th of February, 1887. 24 Stat. 379. The petitioner is a resident of Summerville, an incorporated town on the line of the South Carolina Railway Company, about 22 miles from Charleston, S. C. He complained that he had been compelled to pay upon a shipment of two car loads of hay, from Memphis to Summerville, 28 cents per hundred weight, while the through freight charge from Memphis to Charleston is but 19 cents per hundredweight. He charged that this was in violation of section 4 of the act of 1887, the long and short haul clause. The commission heard the case on the petition and answers, decided in favor of the petitioner, and ordered the South Carolina Railway Company, then and at the date of filing the petition in the hands of a receiver, to reduce the rate from Memphis to Summerville to 19

cents. The defendant the South Carolina Railway Company, by its receiver, has not obeyed the order.

The facts of the case are: The two car loads of hay were shipped from Memphis, Tenn., to Chattanooga, Tenn., 310 miles,—over the Memphis & Charleston Railroad from Chattanooga to Atlanta, Ga., 152 miles; over the East Tennessee, Virginia & Georgia Railroad from Atlanta to Augusta, Ga., 171 miles; over the Georgia Railroad, and from Augusta, Ga., to Summerville, S. C., 115 miles. The through freight charge from Memphis to Charleston is 19 cents. In addition to this the petitioner paid 9 cents. In the through freight charge of 19 cents all these railroads participate. None of them but the South Carolina Railway had any interest in the nine cents. This is the rate of freight from Charleston to Summerville approved by the railroad commissioners of South Carolina. All the railroads named are parties defendant. At the date of the transaction complained of, 17th of August, 1892, the South Carolina Railway Company was in the hands of D. H. Chamberlain, receiver. The railway property was sold under foreclosure of mortgage, in the proceedings in which he was appointed receiver, by D. H. Chamberlain, as special master, he having been thereunto named. The sale was confirmed 24th of April, 1894, the terms of sale complied with, the deed of conveyance executed shortly thereafter, to wit, 1st of May, 1894, and the purchasers were put into possession; and afterwards the South Carolina & Georgia Railroad Company, under purchase from and conveyance by them, was put into absolute possession on 1st of July, 1894. The cause was heard before the commission. Its decision was rendered 27th of June, 1894. It was served on D. H. Chamberlain, receiver, some time in July, 1894. There is no evidence of any notice to, or service on, or refusal or neglect to obey the order on the part of, the South Carolina & Georgia Railroad Company, styled, in these proceedings, the "Successor, Assignee, and Purchaser of the South Carolina Railway Company, and Its Receiver, Daniel H. Chamberlain."

At the threshold of the case is a motion to dismiss these proceedings against the South Carolina & Georgia Railroad Company for the want of this evidence above stated. As the testimony taken in the cause develops, and it is not disputed, the other roads made defendants had no contract or agreement for through rates from Memphis to Summerville. The rate was to Charleston, a competitive point. Nor did any of the roads other than the South Carolina Railway Company share in the 9 cents over the 19 cents per hundred weight. This excess went to the South Carolina Railway alone. This preliminary objection, therefore, is vital. It is very clear that the South Carolina & Georgia Railroad Company did not become liable in these proceedings against the receiver of the South Carolina Railway merely because it was the alienee of the purchaser at the foreclosure sale, or even were it the purchaser itself. Sullivan v. Railroad Co., 94 U. S., at page 810; Hoard v. Railroad Co., 123 U. S. 222, 8 Sup. Ct. 74. If it is so liable, the liability must arise from the terms of sale under which the purchase was made.

The petitioner relies upon the terms of the order of sale in the decree of foreclosure of the South Carolina Railway Company, which are in these words:

"The purchaser or purchasers at said sale shall, as part of the consideration and purchase price of the property purchased, take said property upon the express condition that he or they, or their assigns, will pay, satisfy, and discharge any unpaid compensation allowed to the receiver, and all claims made against said receiver, and all obligations contracted and obligations incurred by the receiver, or which may be contracted or incurred by the receiver prior to the delivery of the possession of the property sold to the purchaser or purchasers, and which shall not have been paid by the receiver prior to such delivery of possession out of the income of the mortgaged property."

The language of this part of the decree clearly refers to pecuniary obligations. The purchasers are to pay, satisfy, and discharge any unpaid compensation, all claims made against the receiver, and all obligations of the receiver which shall not have been paid, etc.

The fifth section of the amended act (1889) amending section 16 of the amended act (1887) imposes no punishment, pecuniary or otherwise, for disobeying the order of the commission. It does inflict a fine upon the offending party if it disobey the order of the circuit court of the United States, if the commission appeal to such court for assistance, and that court issue its injunction or other process commanding disobedience to the order of the commission to cease. But in such case the punishment is in the nature of a contempt proceeding, and the party must be punished for his own act. It cannot be presumed that the South Carolina & Georgia have the same rates as the receiver had when he controlled the property. We cannot presume that this new company, wholly disconnected with the receiver, had adopted all his alliances. Non constat, that it would disobey the commission if it were served with an order from it. Clearly, the refusal of the receiver, made nearly two months after the property had been conveyed, and nearly one month after the South Carolina & Georgia Railroad Company were in exclusive possession, in their own right, cannot bind that company.

The petition in this court avers "that the findings and conclusions of the commission in this case, together with a copy of the order and notice, were delivered to each and all of the parties to the cause, their receivers, and successors in operation." On this averment it bases its prayer for temporary and permanent injunction against the South Carolina & Georgia Railroad Company, as successors in operation of the receiver. The evidence fails to establish this most material averment. So far as the South Carolina & Georgia Railroad is concerned, and as to the South Carolina & Georgia Railroad Company, the prayer of the petition is coram non judice. The only ground of jurisdiction against the South Carolina & Georgia Railroad Company is that, having been served with a copy of the order of the commission, it refused or neglected to obey it. The record discloses no such service, refusal, or neglect.

But, besides the South Carolina & Georgia Railroad Company there are other defendants. They have answered, and have met the issues presented by the petition. The questions made are of deep interest

and require solution. The answer, in which all the defendants join except the South Carolina & Georgia Railroad Company, admits the hearing before the commission and the result, and denies as well, that it had the effect of a judicial decision, as its correctness in law or fact. It admits that the joint rate agreed upon between the defendants for hay from Memphis to Charleston is 19 cents per hundred weight, but it denies that there is anything more than an arrangement between independent companies, each of which has a specified and distinct interest in this rate. It denies that there is any agreement for a through rate to Summerville, S. C., from Memphis. It avers that this rate of 19 cents per hundred weight is reasonable; that it is the result, not only of competition between the roads charging it, but of competition at Charleston with all other railroad routes, with rail and water transportation and with all water transportation; that the rate on hay to Summerville is made up of this 19 cents per hundred weight through charge, which, alone, is divided between the defendants in definite proportions, and of 9 cents per hundred weight, charged as a local rate on the South Carolina Railway between Charleston and Summerville; that the through rate greatly exceeds what the aggregate of local rates would be; that the local rate of 9 cents has the approval of the railroad commission of South Carolina; and that it is reasonable.

The controlling question in this case is: Have these defendants violated the provisions of the fourth section of the act of congress approved 4th February, 1887 ("An act to regulate commerce," 24 Stat. 379).

Section 4: "That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property under substantially similar circumstances and conditions for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer distance, but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance: Provided, however, that upon application to the commission appointed under the provisions of this act, such common carrier may in special cases after investigation by the commission be authorized to charge less for longer than for shorter distances for the transportation of passengers or property. And the commissioner may from time to time prescribe the extent to which such designated common carrier may be relieved from operation of this section of this act."

The defendants did not avail themselves of this proviso, notwithstanding that the commission opened the door for them to do so. So the question in this case is: Was this charge of 28 cents per hundred weight from Memphis to Summerville made by these defendants, and was it made under substantially similar circumstances and conditions as the charge of 19 cents per hundred weight from Memphis to Charleston, the distance from Memphis to Summerville being shorter than the distance from Memphis to Charleston, both Summerville and Charleston being on the same line, and in the same direction? It would appear, from the evidence in this case, that these defendants had no common controlling head, that they were inde-

p ndent of each other, and that, acting independently, they had so arranged their charges of freight on hay and articles of this character that 19 cents per hundred weight would be divided between them for transportation between Memphis and Charleston. They had similar contracts from Memphis to Chattanooga, to Atlanta, to Augusta. But these contracts did not include any intermediate points. In the case at bar, all that was received by all these connecting roads was 19 cents per hundred weight. The South Carolina Railway Company shared in this. In addition, this railway company charged 9 cents because the shipment was to Summerville, and this 9 cents it shared with no one.

Strictly speaking, therefore, the defendants did not charge for anything but transportation between Memphis and Charleston. There was no arrangement between them for any other through rate to any other point in South Carolina than Charleston, and no authority in anyone to change or enlarge the terms of the contract. Certainly, the shipping agent in Memphis could not do it. He may very well have said to one who desired to ship hay into South Carolina, and who wished to avoid the local rates on each road: "I can do this for you: We have through rates to competitive points. I can give you the benefit of the through rate to Augusta, or I can give you the through rate to Charleston. My authority goes no further. I can put your freight within reach of you on the South Carolina Railway, and can bind this road only as to the rate to Charleston. When you get it there you must contract with the South Carolina Railway Company." The South Carolina Railway Company itself could say to its contracting roads: "We are perfectly willing to contract with you for a through rate to Charleston. There we meet competitive carriers and competing markets, and, if we do not meet you in lowering the through rates, you, and we as well, will lose business. But we will not agree to through rates to points where we have no competition, and especially to points on our road. Freight to these points and charges for transportation are our own business, and no one else is concerned in it." The mandate of the commission, therefore, to these defendants, other than the South Carolina Railway Company, directs them to do that which is out of their power to do, and is nugatory and void.

But, if we assume, for the sake of argument, that all the defendants are affected by this charge, does it violate the fourth section of the act above quoted? Judge Cooley, in Re Louisville & N. R. Co., 1 Interst. Commerce Com. R. 57, says:

"The charging or receiving greater compensation for the shorter than for the longer haul is sure to be forbidden only where both are under substantially the same circumstances and conditions. And, therefore, if in any case the carrier, without first obtaining an order of relief, shall depart from the general rule, its so doing will not, alone, convict it of illegality, since, if the circumstances and conditions of the two hauls are dissimilar, the statute is not violated."

This is quoted with approbation by the United States circuit court, Southern district of California (Inter-State Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed. 295).

When, then, may the circumstances and conditions of the two hauls be said to be dissimilar? Judge Cooley, in the same case, answers this question:

"Among other things in cases where the circumstances and conditions of the traffic were affected by the element of competition and where exceptions might be a necessity if the competition were to continue. And water competition was, beyond doubt, especially in view."

In the case from 50 Fed. above cited, this is one of the rubrics:

"Los Angeles, Cal., is a point to which there is active competition in certain kinds of freight between several transcontinental railway lines, direct or by water, via Vancouver and San Francisco; also, by ocean freights via Aspinwall and the Straits of Magellan, from points east of the Missouri river. And a through rate on the same kind of freight, lower than to San Bernardino, an intermediate, noncompetitive point, 60 miles from Los Angeles, on one of the competing railroad lines, is not prohibited by the act, since the circumstances and conditions were substantially dissimilar."

The circumstances of the case at bar are closely like those of the case just quoted. Charleston is a competitive point between all railroad routes, routes partly by rail and partly by water, and routes all water. If the defendants had not consented with each other to lower the rate, no hay whatever would come from the hay-producing territory tributary to Memphis, and all the Southeast Atlantic states would be compelled to rely on other portions of the West, North, or Northeast for hay. The evidence clearly shows that the rate to Charleston was forced down by this competition. But this is an advantage to all the territory tributary to Charleston, and all stations share in it. No such competition exists at Summerville, a small inland town. If it, and others like it, were permitted to share in the circumstances and conditions surrounding Charleston, and to get the benefit of the competition which Charleston enjoys and they have not, then, ex necessitate, the South Carolina Railway will be called upon to elect between its through business and its local business, and in this election to give up the former. Thus, all stations on the line of road will pay local freight on hay, and the market, to the extent of imports from Memphis, will be destroyed. The interstate commerce law was intended to promote trade. Such a construction as is now sought would destroy competition, the life of trade.

The bill is dismissed.