INTERSTATE COMMERCE COMMISSION v. WESTERN NEW YORK & P. R. CO. et al.

(Circuit Court, W. D. Pennsylvania.  July 3, 1897.)

No. 24.

1. COMMERCE—PETITION OF INTERSTATE COMMERCE COMMISSION—JURISDICTION OF PARTIES.
    In an action by the commissioners, under the sixteenth section of the interstate commerce act, where the petition and the attached exhibits show the substance of the complaint against the defendants to be a charge of a common arrangement for a continuous carriage by railroad from points within the district to points in other states, and that it is by combined action and joint agreement among the defendants the unlawful discriminations complained of are committed, an allegation of the violation or disobedience of an order of the commission by one of the defendants within the district sufficiently charges its violation or disobedience by all who are parties to, and acting under, the common arrangement, and the jurisdiction of the court over all the defendants clearly appears.

2. SAME—SUCCEEDING RAILROAD COMPANY.
    When an order against unjust discrimination made by the interstate commerce commission is binding on a railroad company, it is binding on the successor of such company.

3. JURISDICTION OF COURT OF EQUITY—ENFORCEMENT OF CLAIMS.
    In an action by the commissioners, under the sixteenth section of the interstate commerce act, in the circuit court sitting as a court of equity, to restrain the defendant railroad companies from further continuing the violation and disobedience of an order of the commission, and to enjoin obedience to the same, where the order, besides requiring the several defendant companies to cease and desist from certain acts found by the commission to constitute unlawful discrimination between shippers, also required them to make reparation to the complaining shippers, the commissioners afterwards determining the amount to which each claimant was entitled, so far as the petition seeks the enforcement of these claims, the court, sitting as a court of equity, has no jurisdiction of the subject-matter, but as to the other matters charged it has jurisdiction.

Sur Demurrers to the Petition of the Interstate Commerce Commission, and Motion to Dismiss Petition.

Lee & Chapman, W. J. Heywang, and S. S. Mehard, for complainants.

T. B. Jennings, for New York, L. E. & W. R. Co. and Receivers.
Frank Rumsey, for Western New York & P. R. Co. and Receivers.
David Wilcox, for Delaware & H. Canal Co.
F. J. Gowen, for Lehigh Valley R. Co.
Geo. B. Gordon, for Pennsylvania Co.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge.    At the hearing of the demurrers to the petition, and the motion to dismiss the petition, the arguments of counsel took a wide range, embracing some questions which we think are not properly determinable at this stage of the case.    In disposing of the demurrers and the pending motion we will confine our discussion to three points only:

1. The sixteenth section of the interstate commerce act provides that in cases of the violation of, or disobedience to, the order or requirement of the commission, application by petition for relief may be made to the circuit court of the United States sitting "in the judicial district in which the common carrier complained of has its principal office or in which the violation or disobedience of such order or requirement shall happen."    By the primary order of the commission here sought to be enforced, made on November 14, 1892, the railroad companies complained of were required to cease and desist from certain specified acts found by the commission to constitute unjust and unlawful discrimination between shippers of petroleum oil transported over their respective roads or lines of railway from the oil regions of Western Pennsylvania to New York and New York Harbor points, and to Boston and Boston points.    The petition of the interstate commerce commission, after reciting the said order, and setting forth that each of the defendants is a common carrier engaged in the transportation of property by railroad, alone or together with some one or more of the other defendants, from Titusville and Oil City, in the state of Pennsylvania, to New York City, and other points, known as "New York Harbor Points," and to Boston, in the state of Massachusetts, charges that all of the defendants "have willfully continued to fail and neglect, and they still refuse, to obey and conform to said requirements as set forth in said order," and that "by so failing, neglecting, and refusing said defendants have violated, and do continue to violate, provisions of said act to regulate commerce, at, to wit, Titusville and Oil City, in the state of Pennsylvania."    Upon the face of the petition, therefore, our rightful jurisdiction of all the defendants appears, for each of them is therein charged with the violation or disobedience within this judicial district of the order or requirement of the commission.    But if we look beyond the terms of the petition itself, and examine the attached exhibits, our jurisdiction seems to be equally clear.    The substance of the complaint against the defendants is that they are engaged in the transportation of petroleum oil by railroad under common arrangements for continuous carriage thereof from Titusville and Oil City, and other points in the Western district of Pennsylvania, to points at the seaboard in other states, and that by joint agreement and combined action among the defendants the alleged unlawful discriminations complained of are committed. If the allegations are true, it may well be said that the violation or disobedience within this judicial district of the order of the commission by any one of the defendants is the violation or disobedience of all the defendants who are parties to, and acting under, the common

82 F.—13

arrangement. Interstate Commerce Commission v. Southern Pac. Co., 74 Fed. 42; Texas & P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666.

2. The petition sets forth that the railroad formerly owned by the Western New York & Pennsylvania Railroad Company, one of the defendants in the proceeding before the commission, now is, and since about March 31, 1895, has been, owned, controlled, and operated by the Western New York & Pennsylvania Railway Company, and that the railroad formerly owned by the New York, Lake Erie & Western Railroad Company, one of the defendants in the proceeding before the commission, now is, and since about November 20, 1895, has been, owned, controlled, and operated by the Erie Railroad Company. Both of these new companies—the Western New York & Pennsylvania Railway Company and the Erie Railroad Company—are joined as parties defendant in this suit, and the petition distinctly avers that these two companies have willfully failed and neglected and refuse to obey and conform to the requirements of the order of the commission made on November 14, 1892. Each of these two new companies sets up as ground of demurrer to the petition that it was not a party to the proceeding before the interstate commerce commission, and that no order or requirement against or of it has been made by the commission. The order, however, here sought to be enforced, was made against the old railroad companies, to which the Western New York & Pennsylvania Railway Company and the Erie Railroad Company, respectively, have since become successors. The question then is, are these succeeding companies to be regarded as strangers to that order? We cannot think so. It would indeed be lamentable if a lawful order against unjust discrimination by a railroad company, made by the interstate commerce commission after a protracted investigation, could be nullified by the subsequent reorganization of the company, or transfer of its railroad and franchises to another corporation. It is a settled principle that the purchaser of property in litigation, pendente lite, is bound by the judgment or decree in the suit. 1 Story, Eq. Jur. § 405. And the rule is said to be founded upon great public policy, for otherwise alienations made during a suit might defeat its whole purpose, and there would be no end to litigation. Id. § 406. This principle is applicable here. This case is very different from those of Sullivan v. Railroad Co., 94 U. S. 806, and Hoard v. Railway Co., 123 U. S. 222, 8 Sup. Ct. 74, wherein it was attempted to enforce against a succeeding owner a contractual liability which did not run with the property, but simply bound the former owner personally. Here the new railroad companies have succeeded to the enjoyment of public franchises, and they have voluntarily taken upon themselves the performance of reciprocal public duties. This proceeding is for the enforcement of a public duty which is inseparable from the ownership of the railroad. No injustice is done to these new companies by joining them as defendants here, for they are entitled to be heard against the enforcement of the order of the commission, and the court is to proceed and determine "in such manner as to do justice in the premises." These views are not at variance with the decision in Behlmer v. Railroad Co., 71 Fed.

835, as we understand that case. There the question as to the enforcement of the order of the commission against the succeeding company arose at final hearing, when it appeared that the jurisdictional averments of the petition were not sustained by the proofs. The court there said:

"The only ground of jurisdiction against the South Carolina & Georgia Railroad Company is that, having been served with a copy of the order of the commission, it refused or neglected to obey it. The record discloses no such service, refusal, or neglect."

3. The order of the commission of November 14, 1892, in general terms directed and required the railroad companies complained of to make reparation to the complaining shippers. Afterwards, upon further investigation to ascertain the amounts wrongfully taken from the complainants, respectively, the commission, in the case of each complaining shipper, made a finding and order, dated October 22, 1895, determining the amount which such complainant was entitled to recover as reparation for damages resulting to such complainant from excessive and unlawful transportation charges exacted upon oil shipments, and directing payment thereof by the offending railroad companies to such complainant. There are a number of these special findings and orders. One of the grounds of demurrer to the petition of the commission is "that, in so far as the petition seeks the enforcement of orders for refunding or reparation or payment of damages to the several claimants named in the orders, this court, sitting as a court of equity, has no jurisdiction of the subject-matter of the action; such orders being enforceable, if at all, only in the circuit court of the United States, sitting as a court of law." The sixteenth section of the interstate commerce act, which authorizes summary application for relief to the circuit court of the United States, provides for two classes of cases. The first class embraces cases of refusal or neglect to obey and perform any lawful order or requirement of the commission "not founded upon a controversy requiring a trial by jury, as provided in the seventh amendment to the constitution of the United States"; and it is enacted that in such instances "it shall be lawful for the commission, or for any company or person interested in such order or requirement, to apply in a summary way, by petition, to the circuit court of the United States sitting in equity," alleging such violation or disobedience. It is further here enacted that if, upon the hearing, it is made to appear to the court "that the lawful order or requirement of said commission drawn in question has been violated or disobeyed, it shall be lawful for such court to issue a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further continuing such violation or disobedience of such order or requirement of said commission, and enjoining obedience to the same," with provisions for enforcing compliance by attachment and otherwise. The second class of cases embraces those where "the matters involved in any such order or requirement of said commission are founded upon a controversy requiring a trial by jury, as provided by the seventh amendment to the constitution of the United States"; and it is enacted that in case of a violation thereof, or refusal or neglect to obey and perform the same, "it

shall be lawful for any company or person interested in such order or requirement to apply in a summary way, by petition, to the circuit court of the United States sitting as a court of law," alleging such violation or disobedience, whereupon the court shall make an order fixing the time and place for the trial of the cause by jury. It is very plain, upon the face of this legislation, that it was the intention of congress to preserve to common carriers their constitutional right to trial by jury unimpaired. Throughout the whole act the distinction between legal and equitable rights and remedies is sharply defined and most carefully maintained. Now, it is clear to us that the orders of the commission fixing the amounts recoverable by the several claimants "for damage resulting to said claimant from excessive and unlawful transportation charges exacted upon shipments of petroleum oil," and directing reparation to be made by the railroad companies, involve matters not within the province of a court of equity, but matters determinable at law. These claims are for damages for alleged wrongs already committed. To each claimant a suit at law affords a plain, adequate, and complete remedy. Undeniably, under the ninth section of the interstate commerce act, these several claimants might originally have brought suits at law for the recovery of their damages in any district or circuit court of the United States of competent jurisdiction. Can it then be that the railroad companies are to be deprived of the right of trial by jury with respect to these claims because the claimants saw fit to exercise the option, given to them by the act, to proceed in the first instance by complaint to the commission? No such result, it seems to us, is contemplated by the act. The counsel for the interstate commerce commission, however, invoke, and ask us to apply to this case, the recognized doctrine that, where the jurisdiction of equity has once attached because of a wrong requiring its peculiar aid, the court will take cognizance of the whole matter in controversy, and administer full relief. But to this suggestion it is, we think, a decisive answer that in this case the court is not exercising its general equity powers. The jurisdiction of the court here is auxiliary and limited. Detroit, G. H. & M. Ry. Co. v. Interstate Commerce Commission, 21 C. C. A. 103, 74 Fed. 803, 841. In exercising this special statutory jurisdiction in aid of the interstate commerce commission, the court must be guided by the provisions of the interstate commerce act. Now, we search the act in vain to discover any warrant for administering equitable relief to these claimants of damages under the orders of the commission made in their behalf. Moreover, these reparation orders are separable from, and independent of, the order regulating the future conduct of the defendants in the transportation of petroleum oil. Agai we find in the act no authority to the commission to file a petition i.. enforce such orders. We are clearly of opinion that these orders severally involve matters founded upon a controversy requiring a trial by jury, within the meaning of the interstate commerce act; and therefore, if they are lawful orders, the several claimants must themselves proceed for the enforcement thereof by petition to the court sitting as a court of law. And now, July 3, 1897, the demurrers to so much of the petition as seeks the enforcement of orders for

refunding or reparation or payment of damages to the several claimants named in the orders are sustained, but in all other respects the demurrers are overruled, and the motion to dismiss the petition is denied, with leave to such of the defendants as have not already filed answers to answer the petition within 30 days.