INTERSTATE COMMERCE COMMISSION v. WESTERN & A. R. CO. et al.

(Circuit Court, N. D. Georgia. June 15, 1898.)

No. 524.

1. **THE FOURTH SECTION OF THE ACT TO REGULATE COMMERCE.**

If a greater charge be made for a shorter than for a longer distance over the same line, etc., and the circumstances and conditions at the longer distance point are substantially similar to those at the shorter distance points, it is a violation of the fourth section; but if the circumstances and conditions at the longer distance point are substantially dissimilar, within the meaning of the act, to those at the shorter distance point, the fourth section is not violated.

2. **SAME.**

If the circumstances and conditions at the longer distance point are substantially dissimilar from those at the shorter distance point, then the fourth section of the act is inapplicable. Cases cited and followed: In re Louisville & N. R. Co., 1 Interst. Commerce Com. R. 57; 1 Interst. Commerce Com. R. 278; Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed. 300; Behlmer v. Railroad Co., 71 Fed. 839; Interstate Commerce Commission v. Alabama M. Ry. Co., 18 Sup. Ct. 45, 168 U. S. 144. Case cited and disapproved: Interstate Commerce Commission v. East Tennessee, V. & G. Ry. Co., 85 Fed. 107.

3. **SAME—SIMILARITY OF CIRCUMSTANCES AND CONDITIONS—COMPETITION.**

Competition is one of the most obvious and effective circumstances that make the conditions under which a long and short haul is performed dissimilar, and as such must have been in the contemplation of congress in the passage of the act to regulate commerce. Case cited: Interstate Commerce Commission v. Alabama M. Ry. Co., 18 Sup. Ct. 45, 168 U. S. 144.

4. **SAME—COMPETITION BETWEEN RAILWAYS.**

Railway competition may create such dissimilar circumstances and conditions as exempt the carrier from an observance of the long and short haul provision. The fourth section declares that the carrier shall not make the higher charge to the nearer point under substantially similar circumstances and conditions. If the circumstances and conditions are not substantially similar, then the section does not apply, and the carrier is not bound to regard it in the making of its tariffs. If railway competition does actually control the rate at the more distant point, that rate is not made under the same circumstances and conditions as is the rate at the

intermediate point, and the higher rate is not prohibited by the fourth section. Cases cited: Savannah Bureau of Freight & Transportation v. Charleston & S. Ry. Co., 7 Interst. Commerce Com. R. 479; 11 Ann. Rep. Interst. Commerce Com. pp. 37–43.

**5. SAME—POWER OF COURTS AND COMMISSION IN REGARD TO RATES.**

Where the circumstances and conditions at the longer distance point are substantially dissimilar, the carrier may judge of this for itself, in the first instance, and fix the rates for the longer distance point without violating the fourth section of the act; but this does not preclude the courts or the commission from inquiring as to whether the rates to the shorter distance points are unjust or unreasonable, or whether they constitute undue preference for, or unjust prejudice against, any locality. Case cited: Interstate Commerce Commission v. Alabama M. Ry. Co., 21 C. C. A. 51, 74 Fed. 723; Id., 18 Sup. Ct. 45, 168 U. S. 173.

**6. SAME.**

In order to constitute dissimilarity under the fourth section of the act, the competition must be real, and not imaginary or trifling.

**7. THE THIRD SECTION OF THE ACT TO REGULATE COMMERCE—UNDUE PREFERENCE.**

Railway companies are only bound to give the same terms to all persons alike under the same conditions and circumstances, and any fact which produces an inequality of condition and a change of circumstances justifies an inequality of charge. Case cited: Interstate Commerce Commission v. Baltimore & O. R. Co., 12 Sup. Ct. 844, 145 U. S. 283.

**8. SAME—COMPETITION.**

If the lesser charge to the longer distance point results from dissimilar circumstances and conditions brought about by competition, it cannot be said to be a preference which is undue or unreasonable.

**9. SAME.**

All the evidence shows is that the rate to Atlanta, the longer distance point in this case, is forced on the railroad officials by competition. There is no evidence of any improper desire on the part of these officials to give Atlanta a lower rate or the local shorter distance points a higher rate. The matter is controlled by existing competitive conditions. Unless the rates complained of, as compared with each other, violate the fourth section of the act, there seems to be very little ground for claiming that they violate the undue-preference provision of the third section. Case cited: Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 56 Fed. 947, 948.

**10. SAME.**

Government should not undertake the impossible, but injurious, task of making the commercial advantages of one place equal to those of another. It might as well attempt to equalize the intellectual powers of its people. There should be no attempt to deprive a community of its natural advantages, or those legitimate rewards which flow from large investments, business industries, and competing systems of transportation to facilitate and increase commerce. The act to regulate commerce has no such purpose. Case cited: Brewer v. Railway Co., 84 Fed. 258.

**11. THE FIRST SECTION OF THE ACT TO REGULATE COMMERCE—REASONABLENESS OF RATES IN AND OF THEMSELVES.**

The first section provides that all charges for the transportation of property. etc., shall be reasonable and just. There is no evidence to justify a finding that the rates charged to the shorter distance points in this case are unjust and unreasonable in and of themselves. The mere fact that lower rates which are charged to a longer distance competitive point pay something above the cost of the service of carriage does not show that the shorter distance rates are unreasonable.

**12. SAME—COMBINATION RATES.**

The rates to the shorter distance points in this case are made up of a highly competitive rate from point of shipment to Chattanooga, added to a local rate to destination fixed by the Georgia Railroad Commission. The rates in question, when separately considered, are not unreasonable or

unjust. On the contrary, the testimony is that each is reasonable of itself. Case cited: Interstate Commerce Commission v. Alabama M. Ry. Co., 21 C. C. A. 51, 74 Fed. 723.

13. THE SECOND SECTION OF THE ACT TO REGULATE COMMERCE.
The second section deals with preferences as between shippers, and not as between localities, and it is conceded to be wholly inapplicable to this case.

Geo. L. Bell, Asst. U. S. Atty. (L. A. Shaver, of counsel), for complainant.

Ed. Baxter and Payne & Tye, for defendants.

NEWMAN, District Judge. On the 16th day of October, 1891, L. N. Trammell, Allen Fort, and Virgil Powers, constituting the railroad commission of Georgia, filed with the interstate commerce commission a petition setting up a violation on the part of the above-named defendants of section 4 of the act of congress, entitled "An act to regulate commerce" (24 Stat. 379). The petition, after setting out that the defendants are common carriers engaged in transporting goods from Cincinnati, Ohio, to points in Georgia, and therefore subject to the act to regulate commerce, complains that the rates charged on freight from Cincinnati and other Ohio river points to Calhoun, Adairsville, Kingston, Cartersville, Acworth, and Marietta, local stations on the line of the Western & Atlantic Railroad in Georgia, are greater than the rates charged to Atlanta, the eastern terminus of the Western & Atlantic Railroad, and a longer distance point. It was alleged that the transportation to Atlanta and to the local stations named was under substantially similar circumstances and conditions. The petition further stated that Marietta is 20 miles west of Atlanta and 118 miles east of Chattanooga, that Acworth is 35 miles west of Atlanta and 103 miles east of Chattanooga, that Cartersville is 48 miles west of Atlanta and 90 miles east of Chattanooga, that Kingston is 59 miles west of Atlanta and 79 miles east of Chattanooga, that Adairsville is 69 miles west of Atlanta and 69 miles east of Chattanooga, and that Calhoun is 78 miles west of Atlanta and 60 miles east of Chattanooga; that the rates of freight charged, collected, and received by the defendants for freight transportation by continuous carriage from the city of Cincinnati and other Ohio river points to the towns and stations above named were more and greater on each class than the amount charged and received for freight to the city of Atlanta, which is a greater distance from the city of Cincinnati; that, therefore, the rates were unreasonable and discriminating in their nature; that they have called the attention of the officials of the Western & Atlantic Railroad Company to the fact, and that they have refused and declined to change the same. The prayer of the petition is as follows:

"Whereupon petitioners, as the railroad commission of the state of Georgia, come and present the facts as aforesaid, and appeal to the interstate commerce commission for relief, and aver and charge that the aforesaid through rate of freight into the state of Georgia and to the different towns and stations on the Western & Atlantic Railroad, so made, charged, and collected by the carriers as aforesaid, is unreasonable and discriminating in its nature, and is in direct violation of section 4 of the act of congress entitled 'An act to regulate commerce.'"

Answers were filed by the defendants, in which substantially they denied that the transportation to Atlanta and the other points named was under substantially similar circumstances and conditions, or that the rates were unjust and discriminating. After hearing the parties, the interstate commerce commission, on November 11, 1892, filed its report and opinion, and made an order in which it required the railroad companies to desist from the acts complained of in the petition of the Georgia railroad commission. On the 27th day of May, 1893, the interstate commerce commission filed its bill in this court, alleging that the defendant railroad companies had refused, and still refuse, to comply with the order so made by it, asking that said order be enforced, and that the defendant railroad companies be enjoined in accordance with its decision and order. The particular act, therefore, which it is claimed constitutes a violation of section 4 of the act to regulate commerce, is the charging and receiving greater compensation in the aggregate for the transportation of a like kind of property from Cincinnati and other points, called and known as "Ohio river points," for a shorter distance to Calhoun, Adairsville, Kingston, Cartersville, Acworth, and Marietta, in the state of Georgia, than for a longer distance over the same line in the same direction to Atlanta, also in the state of Georgia; the shorter being included within the longer distance. The claim, of course, is, and the conclusion of the commission was, that freight carried from Cincinnati, etc., to Atlanta, is carried under substantially similar circumstances and conditions as freight carried to the shorter distance points named. And this violation of section 4 has been the only question raised prior to this hearing, as shown by the record. If the circumstances and conditions at Atlanta are substantially similar to those at Marietta and the other shorter distance points named, it is conceded to be a violation of section 4 of the act to regulate commerce; if the circumstances and conditions at Atlanta are substantially dissimilar, within the meaning of the act, to those at the shorter distance points, then it is conceded that the fourth section is not violated. As bearing upon this question, and, indeed, as determining it, the question discussed in this case, as in several other cases, has been whether or not competition with other carriers subject to the act to regulate commerce at longer distance points is sufficient to make the carriage to such points under dissimilar circumstances and conditions. The record in this case shows that the rates on first-class goods per 100 pounds, in 1892, and at present, are as follows: From Cincinnati to Chattanooga, 76 cents; to Calhoun, $1.09; to Adairsville, $1.12; to Kingston, $1.15; to Cartersville, $1.18; to Acworth, $1.24; to Marietta, $1.27; and to Atlanta, $1.07. The rate to the six local points named is made up of the through competitive rate to Chattanooga, Tenn., with the local rate authorized by the Georgia railroad commission from Chattanooga to the points named added. The plan of rate-making in Georgia to local noncompetitive stations is to add to the through competitive rate the local rate authorized by the Georgia railroad commission; and when made in this way the above rates are the result.

After the case was at issue in this court, evidence was taken both for the commission and the railway companies. The evidence for the commission was that of merchants at the local stations on the

Western & Atlantic Railroad. Their evidence tended to show that they were put at a disadvantage at their respective places of business by reason of the lower rate to Atlanta, and that injury had resulted to business at these points by reason of the Atlanta rate. The evidence for the railway companies was taken for the purpose of showing, and tends to show, that the rate to Atlanta is the result of active competition; also that the rate to the local stations named on the Western & Atlantic Railroad were just and reasonable rates in and of themselves; also that a lower rate to the local stations would not materially affect the amount of goods carried to those stations, or the volume of business transacted. The testimony is of considerable length, and no attempt will be made to quote from the evidence for either side except from the testimony of one witness out of a number, as to competition existing at Atlanta. Mr. J. M. Culp, the general traffic manager of the Southern Railway, was a witness for the defendants, and the following extract is taken from his testimony, by questions and answers:

"Q. State whether the rates of freight from Ohio river points to Atlanta are controlled by any, and, if so, to what, extent, by competition. A. They are entirely controlled by competition. They are controlled by competition between the railroads themselves, the railroads leading from the Ohio river themselves, and controlled by competition from the Eastern seaboard. The adjustment of rates on certain of the classes is based upon the same rates from Cincinnati to Atlanta as from Baltimore to Atlanta. This is not true of all classes, but it is true of a number of classes. Q. State whether there is any such competition at Calhoun, Adairsville, Kingston, Cartersville, Acworth, and Marietta as exists at Atlanta, Georgia. A. There is not the same competition. There is competition existing up to Chattanooga,—strong competition; and the rates fixed by that competition are used in making rates to these local stations. As I have before testified, to these competitive rates up to Chattanooga are added the rates which are the same for the same distance as the rates of the Georgia commission."

While the testimony varies somewhat, the above is in line with the testimony of all the witnesses for the defendants who testified on the subject. The present case was heard and decided by the interstate commerce commission in 1892. At that time there had been no authoritative determination of the question as to whether or not competition at a longer distance point would render the carriage of freight to such point under substantially dissimilar circumstances and conditions from those existing at a shorter distance point within the meaning of the fourth section of the act to regulate commerce. Since that time several cases have been before the supreme court, and the question thoroughly discussed. It appears to be now finally settled by the decision of the supreme court in the case of Interstate Commerce Commission v. Alabama M. Ry. Co., 168 U. S. 144, 18 Sup. Ct. 45. In that case the substance of the decision by the supreme court may be gathered from a headnote as follows:

"Competition is one of the most obvious and effective circumstances that make the conditions under which a long and short haul is performed substantially dissimilar, and as such must have been in the contemplation of congress in the passage of the act to regulate commerce. This is no longer an open question in this court."

In the case of Savannah Bureau of Freight & Transportation v. Charleston & S. Ry. Co., 7 Interst. Commerce Com. R. 479, the in-

terstate commerce commission, speaking of this decision in the Alabama M. Ry. Co. Case, used the following language:

"The commission has uniformly held. up to the present time, that this species of competition does not create the necessary dissimilarity of circumstances and conditions under that section, and such would have been its decision in this case upon the law as it was supposed to be when the findings of fact were prepared. Since then, however, the supreme court of the United States, by its decision in the case of Interstate Commerce Commission v. Alabama M. Ry. Co. (decided Nov. 8, 1897) 168 U. S. 144, 18 Sup. Ct. 45, has determined that this view of the law is erroneous, and that railway competition may create such dissimilar circumstances and conditions as exempt the carrier from an observance of the long and short haul provision. Under this interpretation of the law as applied to the facts found in this case, we are of the opinion that the charging of the higher rate to the intermediate points as set forth is not obnoxious to the fourth section. The section declares that the carrier shall not make the higher charge to the nearer point under 'substantially similar circumstances and conditions.' If the conditions and circumstances are not substantially similar, then the section does not apply, and the carrier is not bound to regard it in the making of its tariffs. The court has decided that railway competition, if it exists, must be considered. If, therefore, such competition does actually control the rate at the more distant point, that rate is not made under the same circumstances and conditions as is the rate at the intermediate point, and the higher rate is not prohibited by the fourth section."

In the Eleventh Annual Report of the Interstate Commerce Commission (page 37) the commission discussed the Alabama M. Ry. Co. Case, decided by the supreme court, as follows:

"It is stated in the foregoing pages that there was pending before the supreme court of the United States a case arising under the fourth section. Since the above was written, that case has been decided adversely to the contention of the commission. It is proper, therefore, to further state the nature and bearing of that decision. The case is entitled 'Interstate Commerce Commission v. Alabama Midland Railway Company and Others,' and was decided November 8, 1897. The original complaint was brought by the Board of Trade of Troy, Ala., against the Alabama Midland Railway Company and the Georgia Central Railroad Company and their connections. The facts, in brief, are these: Troy, Ala., is situated upon the Alabama Midland Railway, 52 miles east of Montgomery. Rates from all points in the East and Northeast are higher to Troy than to Montgomery via the Alabama Midland, although the traffic over that line passes through Troy on its way to Montgomery. Rates on cotton from Troy to Eastern seaports, like Savannah, are higher than rates on cotton from Montgomery, although the Montgomery cotton passes through Troy upon its way to Savannah. There were other questions in the case, but these sufficiently illustrate what was decided in reference to the fourth section. Troy is reached by two railroads, the Alabama Midland and Georgia Central, and both these lines actually compete at that point for all kinds of traffic. Montgomery is the converging point for several lines of railway, which also compete for all kinds of traffic. The defendants claimed that the lower rate at Montgomery was justified and made necessary by this competition between the different lines centering there, which did not affect the rate to Troy. The fourth section provides that more shall not be charged for the short than for the long haul when the transportation is under 'substantially similar circumstances and conditions.' The defendants insisted that the fact of railway competition at Montgomery made the circumstances and conditions at Troy and at Montgomery dissimilar, and that, therefore, the inhibition of the fourth section did not apply. The commission had held in many previous cases, and held in this case, that railway competition between carriers subject to the provisions of the act should not of itself create necessary dissimilarity in circumstances and conditions. This contention is not sustained by the supreme court, which holds that such competition does

create that dissimilarity, and that the higher rate to Troy is not prohibited by the fourth section."

Then, after discussing at some length the origin of this section, the views of the commission, its purposes, etc., it states (page 43):

"This language is intelligible as to the third section, but we are at a loss to understand how it can be applied to the fourth. That section enacts that the carrier shall not charge more for the short than for the long haul under substantially similar circumstances and conditions. If the circumstances and conditions are similar, the greater charge cannot be made. If the circumstances and conditions are not similar, the section does not apply. The court holds that railway competition of controlling force makes the circumstances dissimilar. If, therefore, we find in a particular case that competition of controlling force actually exists, that ends the matter. We have no power to say whether, nor to what extent, such competition justifies the higher rate to the intermediate point. The third section is still left, and under that section we may inquire whether, under all the circumstances, the rates as adjusted give an undue preference to the competitive point, but the fourth section is by this decision eliminated from the act."

In view of the foregoing statements made by the interstate commerce commission in its report, and in the decision of the Savannah Bureau of Freight & Transportation Case, it may reasonably be assumed that the commission itself would not now, upon the record and facts, decide, in the case under consideration, that the fourth section of the act was violated.

Examining the question of the existence of such competition at Atlanta as is necessary to justify the lower rate, we find that the interstate commerce commission has expressed itself in this case. In its report and opinion in the present case the commission stated:

"The present adjustment of rates to Atlanta is the outcome of severe competition between lines leading from competing markets, like St. Louis, Baltimore, Cincinnati, etc., and with some modifications, occurring from time to time, has been in effect for a considerable period."

If competition generally with other lines renders the circumstances and conditions of the haul dissimilar, severe competition would seem to make it beyond question. As a matter of general public knowledge, Atlanta is many times as large as either of the points on the Western & Atlantic Railroad as to which complaint is made. It is also well known, and it is disclosed by the evidence, that at Atlanta several different lines of railroad compete actively for business; and not only is competition active between carriers, but also between markets competing for the Atlanta business. Goods may be brought by water from New York, Philadelphia, Baltimore, and other Eastern points by steamer to Charleston, Brunswick, and Savannah, and thence by competing lines of railway to Atlanta. From similar points in the North and East there are also competing lines of rail. From points in middle North and the great Northwest, there is competition by rail and partly by water routes. Eight lines of railroads enter Atlanta. Its commercial and manufacturing interests are large and varied. At the local points on the Western & Atlantic Railroad mentioned there is very little, if any, competition. It must be apparent at a glance that the conditions under which transportation is effected to Atlanta and at any of the local stations are entirely different. Assuming, therefore, what is now

clearly decided, that competition may distinguish the circumstances, and should be considered in determining whether a given rate is obnoxious to the fourth section of the act to regulate commerce, it seems clear that the rates complained of in this case are not violative of that section.

In the case of Brewer v. Railway Co., 84 Fed. 258, recently decided by Judge Speer, of the Southern district of Georgia, it is held that the competition existing at Macon, Ga., is such as to distinguish the circumstances and conditions of transportation to that city from those existing at Griffin; and a construction is given the fourth section of the act in accordance with what has been hereinbefore expressed.    Judge Speer, in concluding his opinion, aptly says:

"Shall government undertake the impossible, but injurious, task of making the commercial advantages of one place equal to those of another? It might as well attempt to equalize the intellectual powers of its people. There should be no attempt to deprive a community of its natural advantages, or those legitimate rewards which flow from large investments, business industries, and competing systems of transportation to facilitate and increase commerce. The act to regulate interstate commerce has no such purpose, and yet this appears to be the inevitable result of the relief the complainants seek in this case, without any adequate corresponding advantage either to themselves or to the community in which they live."

It is said, however, that, even if the rates in question here are not objectionable under the fourth section of the act, the charges made to Calhoun, Kingston, Adairsville, Cartersville, Acworth, and Marietta are, in and of themselves, unjust and unreasonable, and as such come within the prohibition of the first section of the act referred to.    That section provides that "all charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for receiving, delivering, storage or handling of such property shall be reasonable and just; and every unreasonable and unjust charge for such service is prohibited and declared to be unlawful."    It has been stated already that the charge originally made in this case, and the one to which evidence was directed, hearings had, and orders made, up to the present time, was the violation of the fourth section of the act, and that the charges made to the local stations on the Western & Atlantic Railroad relatively to the charge made at Atlanta were in violation of that section.    But there is no evidence whatever to justify a finding that the rates charged to Calhoun, Kingston, Adairsville, Cartersville, Acworth, and Marietta are unjust and unreasonable in and of themselves.    It is argued that the fact that the rate to Atlanta is said to be a reasonable and just rate by the witnesses for the defendant, that the rates to the other points, being higher, must be unreasonable.    The witnesses speak of the rate to Atlanta as a part of a general system of rates, and a fair construction of their evidence is that they are spoken of as reasonable in connection with this general system of rate-making. These witnesses testify in response to questions of counsel for complainant that the rate to Atlanta pays something above the cost of the service of carriage.    It is doubtful as to what this expression means, and as to what it includes,—whether it relates simply to the

88 F.—13

cost connected immediately with the transportation of the goods, or whether it embraces all of the cost to the railroad company, including its fixed charges, etc. But, either way, the fact that the rate to Atlanta is reasonable does not show that the other rates are unreasonable.

It is said, also, that the fact that a part of the rate to Calhoun, Kingston, Adairsville, Cartersville, Acworth, and Marietta is the local rate fixed by the Georgia railroad commission for local hauls shows that it is unreasonable. The rates to these points are made up of a highly competitive rate to Chattanooga with the local rate added. The testimony is that each is reasonable of itself. In the Alabama M. Ry. Co. Case in the circuit court of appeals (21 C. C. A. 51, 74 Fed. 723), in reply to a question of this sort, raised in that case, it is said "the rates in question, when separately considered, are not unreasonable or unjust." The facts here being similar, the conclusion should be the same.

It is further urged that this bill should be sustained upon the ground that the rates complained of violate the third section of the act, in that there is an undue preference and advantage in favor of the longer distance point, and an unreasonable prejudice or disadvantage against the shorter distance point. It was said by this court in the case of Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 56 Fed. 925, as follows:

"As to the question of undue preference, under section 3 of the act to regulate commerce, it may be stated that, unless the traffic involved here is obnoxious to the fourth clause of the act, it can hardly be said to be an undue preference in favor of Augusta, or an undue prejudice or disadvantage against Social Circle. In the party rate case (Interstate Commerce Commission v. Baltimore & O. R. Co., 145 U. S. 263, 12 Sup. Ct. 844) the supreme court say: 'But so far as relates to the question of undue preference, it may be presumed that congress, in adopting the language of the English act, had in mind the constructions given to these words by the English courts, and intended to incorporate them into the statute. * * * In short, the substance of all these decisions is that railway companies are only bound to give the same terms to all persons alike, under the same conditions and circumstances, and that any fact which produces an inequality of condition, and a change of circumstances, justifies an inequality of charge.' So that, unless the rates complained of, as compared with each other, violate the fourth section of the act, there seems to be very little ground for claiming that they violate the undue preference provision of the third section."

There might be, of course, a case of undue preference on the one hand and undue prejudice on the other in connection with a charge of a greater rate for the shorter than for the longer haul. But the evidence here fails to show that there is any undue preference in favor of the longer distance point. The evidence shows that the rate to Atlanta is forced on the railroad officials by competition. There is no evidence whatever of any improper desire on the part of these officials to give Atlanta a lower rate or the local points a higher rate. The matter is controlled by existing competitive conditions.

Counsel for the commission, in his able brief, invites the attention of the court to the fact that "violations of the long and short haul rule of section 4 are only a species of undue preference in rates be-

tween localities, and that such violations fall within the purview of the provisions of section 3 forbidding undue preference between localities, and would have been unlawful under that section, although not specifically denounced in section 4. Congress, therefore, in making the greater charge for the shorter than the longer haul the subject of specific denunciation in a distinct section of the law, only intended to emphasize its disapprobation of that particular species of undue preference in rates between localities, and to point it out as one of the principal evils which called for remedial legislation, and which the commerce law was especially designed to remedy." But congress, by the fourth section, intended to establish a test as to the lawfulness or unlawfulness of charges in connection with the long and short haul. Where, under the terms of the section distinctly and specifically dealing with the long and short haul question, certain rates are legal, we cannot turn to another broader and more comprehensive part of the law, and determine them to be illegal. If the lesser charge to the longer distance point results from dissimilar circumstances and conditions brought about by competition, it cannot be said to be a preference which is undue or unreasonable.

Attention has been called by counsel for the commission to a recent decision by Judge Severens in the circuit court for the Eastern district of Tennessee, at Chattanooga, in the case of Interstate Commerce Commission v. East Tennessee, V. & G. R. Co., 85 Fed. 107, and special stress is laid on a part of the opinion by Judge Severens, as follows:

"Now, I do not understand that such a conclusion follows from that decision [decision of the supreme court in the Alabama Midland Case]. On the contrary, I suppose that when a violation of the long and short haul provision is charged, competition is one of the elements which enter into the determination whether the conditions are similar; and, if dissimilarity is found, then the further question arises whether the dissimilarity is so great as to justify the discrimination which is complained of. The language of the act ought not to be tied up by such liberal construction. If it were, then if it should be found that the dissimilarity of conditions is really in favor of the locality discriminated against, the provision would not apply,—a result contrary to the manifest intent. In other words, my opinion is that the restraint of section 4 is to be applied upon the scale of comparison between dissimilarity of conditions and the disparity of rates, and that it is competent under that section to restrain the exaction of the greater charge for the shorter haul, although there may be a substantial dissimilarity of conditions, provided the dissimilarity is not so great as to justify the discrimination made."

This view of the law suggested by Judge Severens, it is submitted with the utmost deference, is not the view adopted by the courts, or, indeed, by the interstate commerce commission itself. The view generally entertained is that, if the circumstances and conditions at the longer distance point are substantially dissimilar from those at the shorter distance point, then the fourth section of the act is inapplicable.

In the case of In re Louisville & N. R. Co., 1 Interst. Commerce Com. R. 57, speaking through Judge Cooley, with reference to the phrase "under substantially similar circumstances and conditions," in the fourth section of the act, the commission says:

"If the circumstances and conditions of the two hauls are dissimilar, the statute is not violated."

In the Eleventh Annual Report, embraced in the language heretofore quoted, is this expression by the commission:

"If, therefore, we find in a particular case that competition of controlling force actually exists, that ends the matter. We have no power to say whether, nor to what extent, such competition justifies the higher rate to the intermediate point."

The language of the commission in the Louisville & N. R. Co. Case has been quoted with approval by Judge Ross in Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed. 300, and by Judge Simonton in Behlmer v. Railroad Co., 71 Fed. 839. Alabama M. Ry. Co. Case, supra.

In the opinion of the circuit court of appeals for the Fifth circuit (21 C. C. A. 59, 74 Fed. 723) in the Alabama M. Ry. Co. Case, by Circuit Judge McCormick, this occurs:

"Within the limits of the exercise of intelligent good faith in the conduct of their business, and subject to the two leading prohibitions that their charges shall not be unreasonable or unjust, and that they shall not unjustly discriminate so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers as they were at the common law, free to make special rates looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce and of their own situation and relation to it, and, generally, to manage their important interests upon the same principles which are regarded as sound and adopted in other trades and pursuits. The carriers are better qualified to adjust such matters than any court or board of public administration; and, within the limitations suggested, it is safe and wise to leave to their traffic managers the adjusting of dissimilar circumstances and conditions to their business."

In the same case in the supreme court this language of the circuit court of appeals is drawn in question, and in the opinion by Justice Shiras for the supreme court (168 U. S. 173, 18 Sup. Ct. 51) it is said:

"The last sentence in this extract is objected to by the commission's counsel, as declaring that the determination of the extent to which discrimination is justified by circumstances and conditions should be left to the carriers. If so read, we should not be ready to adopt or approve such a position. But we understand the statement, read in the connection in which it occurs, to mean only that, when once a substantial dissimilarity of circumstances and conditions has been made to appear, the carriers are, from the nature of the question, better fitted to adjust their rates to suit such dissimilarity of circumstances and conditions than courts or commissions; and when we consider the difficulty—the practical impossibility—of a court or a commission taking into view the various and continually changing facts that bear upon the question, and intelligently regulating rates and charges accordingly, the observation objected to is manifestly just. But it does not mean that the action of the carriers in fixing and adjusting rates in such instances is not subject to revision by the commission and the courts, when it is charged that such action has resulted in rates unjust or unreasonable, or in unjust discrimination and preferences."

The meaning of this must be that, where the circumstances and conditions at the longer distance point are substantially dissimilar, the carrier may judge of this for itself, in the first instance, and fix the rates for the longer distance point without violating the fourth section of the act; but this does not preclude the courts or the com-

mission from inquiring as to whether the rates to the shorter distance points are unjust or unreasonable, or whether they constitute undue preference for, or unjust prejudice against, any locality.

It may be said finally that, in order to constitute dissimilarity under the fourth section of the act, the competition must be real, and not imaginary or trifling, and to this effect are all the decisions on the subject. It is conceded that the second section of the act is wholly inapplicable here, in that it deals with preferences as between shippers, and not as between localities.

The conclusions reached in this case are:

1. It is shown by the evidence and by the record that competition at Atlanta is active and effective, and controls in the making of the rates in controversy to Atlanta, and that there is little or no competition at any of the local points as to which complaint is made by the George commission. Consequently, the haul to Atlanta is not under circumstances and conditions substantially similar to those at the other localities, and therefore the fourth section of the act is not violated.

2. There is nothing whatever in the evidence or in the record from which it can be justly concluded that the rates to any of the local points named are, in and of themselves, unjust and unreasonable, in violation of the first section of the act.

3. The evidence fails to show that the rates complained of violate the third section of the act. The only complaint made, and all that the evidence shows, is that the rate to Atlanta, the longer distance point, is less than the rate to these shorter distance points; and as the rate to Atlanta is shown to have been brought about by, and to be the result of, active competition at that point, it cannot be held to be a preference which is undue or unreasonable in favor of Atlanta, or to subject the local points named to any undue or unreasonable prejudice or disadvantage.

Entertaining the foregoing opinion of the case, the court must deny the injunction prayed for to restrain the continuance of the rates in question