INTERSTATE COMMERCE COMMISSION v. WESTERN & A. R. CO. et al.

SAME v. CLYDE S. S. CO. et al. (two cases.)

(Circuit Court of Appeals, Fifth Circuit. March 21, 1899.)

Nos. 750–752.

1. ACT TO REGULATE COMMERCE—LONG AND SHORT HAULS.
   Competition is a factor to be considered in determining whether shipments of freight to different points on the same line of railroad are made under substantially similar circumstances and conditions, so as to come within the long and short haul provision of the fourth section of the act to regulate commerce (24 Stat. 379); and if such competition is real and controlling as to the rate charged to one point, while it does not affect rates to another, it creates substantially different circumstances and conditions, as between the two, and such section has no application.

2. SAME—UNDUE PREFERENCE AS BETWEEN DIFFERENT POINTS.
   Where a lower rate charged for the carriage of freight to a longer-distance point results solely from the controlling influence of competition at such point, which renders the circumstances and conditions substantially

dissimilar from those existing at an intermediate point, so as to exclude the application to the case of the fourth section of the act (24 Stat. 379), and such competitive rate is not so low as to be unremunerative to the carrier, it cannot afford basis for a claim of undue and unreasonable preference or advantage in favor of the competitive point, or of unreasonable prejudice or disadvantage against the intermediate point, within the inhibition of the third section.

3. SAME—UNJUST AND UNREASONABLE RATES.

Rates to a noncompetitive point cannot be held unjust and unreasonable in themselves, and therefore unlawful, under the first section of the act (24 Stat. 379), where they are made up of the rates charged to the nearest competitive point through which the shipments pass, which are low rates, forced by severe competition, combined with the local rates fixed by the state railroad commission between such point and the point of destination, thus giving the noncompetitive point the full benefit of whatever reduction in rates competition has effected on the line of the shipment, and where the total rates so charged are relatively just, as compared with those to other points in the state, on other lines of road, and similarly situated.

Appeals from the Circuit Court of the United States for the Northern District of Georgia.

L. A. Shaver and J. Ward Gurley, for appellant.

Ed. Baxter, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

McCORMICK, Circuit Judge. The three above-styled causes present substantially similar questions of fact and questions of law. They were heard together in the circuit court and in this court. They were severally originated by petitions filed before the interstate commerce commission against the respective appellees by the railroad commission of Georgia. These petitions were filed on October 22, 1891. The gravamen of the petition in the first-named of the above cases was that the appellees charged, collected, and received for freight transportation, by continuous carriage, from the city of Cincinnati and other Ohio river points to the towns and stations of Marietta, Acworth, Cartersville, Kingston, Adairsville, and Calhoun, on the Western & Atlantic Railroad, a greater amount than the amount charged and received for freight carried through the towns and stations just named to the city of Atlanta; that the rate of freight charged to the shorter-distance points is unreasonable and discriminating in its nature, and is in direct violation of section 4 of the act of congress entitled "An act to regulate commerce" (24 Stat. 379),—and it prays that the defendants therein (appellees here) may be required to answer, and, after due hearing and investigation, an order may be made commanding them to cease and desist from the violations of the act to regulate commerce. In the second suit the same charges and prayer are made as to the rates of the defendants (appellees) from New York and other Eastern cities to points on the Georgia Railroad between Augusta and Atlanta, to wit, Greensboro, Madison, Social Circle, Covington, and Stone Mountain, being the shorter-distance points in that case, and Atlanta, the longer-distance point. In the third complaint the same charges and prayer

are made as to the rates of the defendants (appellees) from New York and other Eastern cities to points on the Atlantic & West Point Railroad and the Western Railway of Alabama between Atlanta and Opelika, to wit, Newnan, Grantville, Hogansville, Lagrange, and West Point, being the shorter-distance points in that case, and Opelika, the longer-distance point. The interstate commerce commission, after due service of these complaints on the defendants therein, and after testimony taken and argument had in behalf of all parties in interest, made its report and decision November 11, 1892, in which it held, in substance, in each of the cases, that all of the carriers, as presented in the cases, are subject to the act to regulate commerce, and to the jurisdiction of the interstate commerce commission as to through shipments from Cincinnati, New York, Philadelphia, Boston, and Baltimore, or from any Ohio river or Mississippi river point, or any Atlantic port north of Charleston, and that they had no right to put in the higher rate for the shorter distance upon their own motion, but should have made application to the commission for relief under the provisory clause of the fourth section, and are technically not now entitled to make defense to the complaints. After discussing the facts in the first case, the commission says:

"In view of these facts, and others shown in the statement of findings, we hold that the defendants are not, upon the evidence, justified in making the greater charges complained of in this case. But this being the first case, since the Louisville & Nashville decision, in which the commission has been called upon to specifically hold that relieving orders must be applied for in this class of cases, we think the carriers should have an opportunity in this case of applying for relief under the proviso of the fourth section, and, if possible, of bringing forward voluntarily, as applicants instead of defendants, additional evidence that may be admissible under such a proceeding as indicated in this opinion. The order will therefore be that the defendants in this case cease and desist, within 20 days after receiving a copy thereof, from charging or receiving any greater compensation in the aggregate for the transportation of a like kind of property from Cincinnati, or other points called and known as 'Ohio River Points,' for the shorter distance, to Calhoun, Adairsville, Kingston, Cartersville, Acworth, or Marietta, than for the longer distance over the same line in the same direction, to Atlanta (the shorter distance being included within the longer distance), or, that the defendants make and file with the commission within the time above specified an application or applications, as the case may require, as provided in the proviso of the fourth section of the act to regulate commerce, for relief from the operation of that section in respect to the prohibition therein contained against charging or receiving any greater compensation in the aggregate for the transportation of like kinds of property from Cincinnati and other Ohio river points to the shorter-distance points above mentioned, than for such transportation over the same line in the same direction for the longer distance, to Atlanta, and show cause within 60 days after service of the order why such application for relief should be granted; and upon such application the evidence already taken in this case may be used. In case the application for relief shall be denied, the order to cease and desist shall stand, and compliance therewith will be required within twenty days after service of the order denying the application."

A substantially similar finding and order was made in each of the two other cases. The appellees did not apply for relief as permitted by the order, and did not change their tariff or rates to the shorter or longer distance points named.

On May 27, 1893, the bills in these cases were exhibited in the circuit court for the Northern district of Georgia, and, by appropriate

averments therein, the proceedings had before the commission, and its decision and order thereon, and the failure of the appellees to comply therewith, were presented · to the court; and prayer was made that such action and orders be taken as were necessary to secure a speedy hearing and determination of the matters and things stated, and that pending the proceedings a writ of injunction, or other proper process, mandatory or otherwise, to restrain the defendants, their officers, servants, and attorneys, from further continuing in their violation of, and disobedience to, the order of the commission, be granted, and that upon final hearing such injunction may be made perpetual. The cases did not come to a speedy hearing. On July 6, 1898, a decree was entered in each case by which the relief sought was refused, and the bill dismissed. 88 Fed. 186. From those decrees these appeals are taken.

It is manifest from the report and opinion of the interstate commerce commission that these cases were considered and decided by it as cases presenting violations of the fourth section of the act to regulate commerce. The commission was not, therefore, called upon to find whether the respective rates in question were reasonable and just, or not. For the same reason, it was not called upon to find whether the rates charged to the shorter-distance points gave an undue or unreasonable preference or advantage to the longer-distance points, or subjected the shorter-distance points to an undue or unreasonable prejudice or disadvantage in any respect whatever. As underlying the provisions of the fourth section, the relative effect of the respective rates is more or less discussed in the report and opinion of the commission; but it does not appear to have made, nor to have intended to be understood as making, any finding of fact in reference to these rates that would affect their relation to any section of the act to regulate commerce, other than the fourth section, on which its opinion and decision proceed and rest. Without conceding this, counsel for the appellant contended in the circuit court, and contends in this court, that on applications like these the courts are not limited to a review of the grounds on which the commission acted, but have, and should exercise, jurisdiction of the whole subject-matter, and, on the law and facts, determine whether the tariff of rates complained of is reasonable and just, or not, and whether it gives any undue or unreasonable preference to the longer-distance points, or subjects the shorter-distance points to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. The appellees contend that their tariff of rates complained of does not violate the fourth section, because the circumstances and conditions under which they carry freight to the shorter-distance points and to the longer-distance points are not substantially similar, but are substantially dissimilar. They contend, further, that their tariff of rates does not violate the third section, for substantially the same reason as exempted them from the operation of the fourth section, and that any preference the tariff gives to the longer-distance points, or prejudice or disadvantage in any respect whatsoever to which it subjects the shorter-distance points, is not undue or unreasonable, but the just and reasonable result of the substantial dissimilarity in conditions

and circumstances under which the freight is carried and delivered to the different points, respectively. They also deny that the rates complained of are unreasonable or unjust, and insist that they are in themselves reasonable and just.

In the case of Interstate Commerce Commission v. Alabama Midland Ry. Co., 168 U. S. 144, 18 Sup. Ct. 45, the supreme court say:

"That competition is one of the most obvious and effective circumstances that make the conditions under which a long and a short haul is performed substantially dissimilar, and, as such, must have been in the contemplation of congress in the passage of the act to regulate commerce, has been held by many of the circuit courts. It is sufficient to cite a few of the number: Ex parte Koehler, 31 Fed. 315; Missouri Pac. Ry. Co. v. Texas & P. Ry. Co., Id. 862; Interstate Commerce Commission v. Atchison, T., etc., R. Co., 50 Fed. 295; Same v. Cincinnati, N. O. & T. P. R. Co., 56 Fed. 925; Behlmer v. Railroad Co., 71 Fed. 835; Interstate Commerce Commission v. Louisville & N. R. Co., 73 Fed. 409. * * * But the question whether competition, as affecting rates, is an element for the commission and the courts to consider in applying the provisions of the act to regulate commerce, is not an open question in this court. * * * To prevent misapprehension, it should be stated that the conclusion to which we are led by these cases—that in applying the provisions of the third and fourth sections of the act, which make it unlawful for common carriers to make or give any undue or unreasonable preference or advantage to any particular person or locality, or to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of the like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line in the same direction, competition which affects rates is one of the matters to be considered—is not applicable to the second section of the act. * * * In order further to guard against any misapprehension of the scope of our decision, it may be well to observe that we do not hold that the mere fact of competition, no matter what its character or extent, necessarily relieves the carrier from the restraints of the third and fourth sections, but only that these sections are not so stringent and imperative as to exclude in all cases the matter of competition from consideration, in determining the questions of undue or unreasonable preference or advantage, or what are substantially similar circumstances and conditions. * * * We are unable to suppose that congress intended by the fourth section, and the proviso thereto, to forbid common carriers, in cases where the circumstances and conditions are substantially dissimilar, from making different rates until and unless the commission shall authorize them so to do. Much less do we think that it was the intention of congress that the decision of the commission, if applied to, could not be reviewed by the courts."

The commission's report says that the present adjustment of rates to Atlanta is the outcome of severe competition between lines leading from the competing markets, like St. Louis, Baltimore, Cincinnati, etc., and, with some modifications occurring from time to time, has been in effect for a considerable period. While it makes no similar finding with reference to Opelika, showing whether or not the adjustment of rates to that point is the outcome of severe competition, either between carrier and carrier or between market and market, its recitals of what the proof shows as to conditions there are to that effect; and the testimony of numerous credible witnesses is clear and pointed to the effect that the adjustment of rates to Opelika is the outcome of controlling competition. It is true that with reference to both points the force of this competition has been recognized by the respective appellees, and its influence has by agreement between them been so adjusted as to fix the rates to each of these points; but witnesses, showing thorough competency to testify to the fact,

state that this adjustment of the rates has been brought about and is maintained by the force of the competition bearing upon those points. It is argued by counsel for the appellant that by this agreement as to rates the carriers have contracted to not compete. But it is not shown or reasonably suggested on what ground, or for what consideration, the competing carriers consented to accept a lower rate to these longer-distance points than they charge to the shorter-distance points, if they could just as well have agreed and contracted to charge as great or greater rates to the longer than to the shorter distance points. A careful consideration of the circumstances and conditions shown by the proof constrains to the conclusion that the difference in the circumstances and conditions has caused the difference that is complained of in the rates. The commission, in its report, says, "Competition has not forced rates down at Kingston, Marietta, and Cartersville." These are junction points, reached by more than one railroad. No railroad other than the Western & Atlantic runs to Calhoun, Adairsville, or Acworth. Some of the shorter-distance points between Augusta and Atlanta and between Atlanta and Opelika have more than one railroad reaching them; but the proof shows that at none of them is there such competition as affects rates, or, to use the language of the commission, "as has forced rates down." In these cases the circuit court found that the rates complained of do not violate the fourth section of the act to regulate commerce; that the lesser charge to the longer-distance point results from dissimilar circumstances and conditions, brought about by competition, and does not give a preference which is undue and unreasonable to the longer-distance point; and that there is nothing whatever in the evidence or in the record from which it can be justly concluded that the rates to any of the local points named are not reasonable and just. 88 Fed. 186. The most careful consideration of the testimony brought up in the records in these cases does not disclose any evidence that was offered by the appellant in the circuit court tending to show that the rates, separately considered, to the respective points, are not reasonable and just; and the replies that were drawn by a most skillful cross-examination from the witnesses called by the appellees do not show, or tend to show, that the rates to the respective points are not reasonable and just. On the contrary, the great volume of testimony given by these witnesses (who show full competency to testify) is directly and clearly to the effect that the rates are reasonable and just. One witness gives as a reason for this opinion (for the subject is hardly susceptible of better proof than the opinion of experts) that the rates are fixed upon the lowest obtainable combination of the rates to competitive points, with the local rates therefrom to the noncompetitive points, so that the traffic to the noncompetitive stations has the benefit of whatever reduction competition has effected in the adjustment of rates to the competitive points, and that the rates are lower than prevail in some of the other sections of the country, and lower than can be obtained by any other means of transportation, and are not higher than are charged from other points of distribution to stations on other railroads under similar circumstances and conditions. And another wit-

ness says the rates are "just and reasonable, in that they are not un-justly or unreasonably high. They are lower than the rates at which the property can be transported by any other means of trans-portation. They have not prevented the shipment of freights. Traf-fic has been shipped with profit under these rates. They are just, relatively, to rates to other points in the state of Georgia similarly situated. These rates are based upon rates to Chattanooga, which are controlled and fixed by competition, and added to the rates from Chattanooga to the several stations, which are the same for the same distance as the rates fixed by the railroad commission of Georgia." These reasons do not convince the counsel for the appellant, but ap-pear to us to have weight. The testimony also shows (and it has become largely a matter of common knowledge) that competition be-tween carriers, whether by rail or by water, not only affects the rate for which freight can be carried, but also substantially affects the circumstances and conditions under which the transportation of freight is conducted. By way of illustration, one witness says that it will and does require a road to run trains at a high rate of speed. It requires the carrier frequently to have cars loaded to a less weight per car. It often requires the carrier to take a part of a car load without waiting to fill up the car. It will frequently require the road to be less rigid in resisting the payment of claims made against it, the payment of which the company might successfully resist, and would stoutly contest at a noncompetitive point. The doing of all of these things, and many more like them not necessary to be done in the absence of competition, is rendered necessary by the presence of such competition, to the degree in which it is present, in order that the carrier may get its share of the business at the competitive point. The testimony shows that the rates of freight from Ohio river points to Atlanta are entirely controlled by competition. The points between Chattanooga and Atlanta get the benefit of the strong com-petition at Chattanooga, but there is not at those points the same force of competition which controls the rates at Atlanta. The tes-timony of the witnesses and the report of the commission show that Opelika is not situated on any water course, and is at the intersec-tion of only two railways, but that it is affected by certain conditions which happen to exist at that point, and which are not to be found at ordinary local stations, or even at ordinary junctions. With its two railroads as terminal carriers, it is connected at comparatively short distances with numerous and extensive systems of rail and water carriage, which make it possible for freight to reach Opelika from the Northern and Eastern ports, and from Ohio river points, by many different routes, the strong competition between which differ-ent carriers comes to a focus at Opelika. Counsel for the appellees concedes that, in taking into consideration competition as one of the circumstances and conditions affecting transportation, care must be had to keep within reasonable limits. He submits that in these cases the reasonable limits are three: (1) That the rates charged to the shorter-distance points must not be unjust or unreasonable, within the purview of the first section of the act to regulate commerce; (2) that the competition at the longer-distance points must be such

as subserves the public interest; it must also be real, and such as to compel the acceptance by the carriers of the rates which they do accept to those points; and (3) that the rates to the longer-distance points must yield a profit, though it may be very small, over the additional cost of the movement of the competitive traffic. He contends that, if the rates to the shorter-distance points are just and reasonable, the appellees ought not to be required to reduce them, even though such reduction may be necessary to place the shorter-distance points upon a "rate equality" with the longer-distance points, because such a reduction in rates to the shorter-distance points involves a serious reduction in the revenue which the appellees derive from the present rates to those points. If the competition at the longer-distance points is real, and such as to affect rates, the carrier must accept those rates, or abandon the competitive traffic. If the competitive rates are something more than the additional cost of the movement of the traffic, it is to the interest of the carrier and to the interest of the public that the carrier should be allowed to compete for the traffic. The profit, however small, to the extent that it inures, increases the revenues of the carrier, and has a tendency to reduce local rates and to improve the local service. There may be a wide difference between a rate or amount of compensation that would give full remuneration for the service in carrying the competitive traffic, and that remuneration therefor which the competitive conditions will allow the carrier to receive. The full measure of reasonable remuneration to the appellees for the carriage of competitive freight to Atlanta would require a rate sufficient to pay, not only the additional cost of moving the competitive traffic, but also that proportion of operating expenses, fixed charges, and reasonable profit to the owners of the carrier lines which the tonnage of the competitive traffic bears to the total freight tonnage of the carrier. And that rate would doubtless be applied and enforced if the circumstances and conditions permitted it to be done. But, as no higher rate than a full compensatory one should be applied and enforced under the most favorable circumstances and conditions, it is manifest that it cannot be applied to traffic that is subject to severe competitive conditions.

There is in these cases no complaint by the appellant, or by any of the witnesses whom the appellant called, that the rates to Atlanta, Opelika, Chattanooga, Augusta, and other competitive points are too low. There is a suggestion by the commission that the average of the rate per ton per mile tends to show that such complaint could not well be made, and that these rates are at least reasonably high. And the testimony offered by the appellees shows that, considering the competitive conditions in operation at those points, the rates to those points are reasonably remunerative. On the basis of this evidence, it is earnestly contended by counsel for the appellant that the rates at the longer-distance points being shown to be reasonably remunerative, and the rates at the shorter-distance points being admitted to be higher, the latter must, of logical necessity, be found to be unreasonably high, and therefore unreasonable and unjust, and such as give an undue preference to the longer-distance points, and sub-

ject the shorter distance points to an undue and unreasonable prejudice and disadvantage. It will be perceived that this argument excludes all consideration of the force of competition, and ignores its presence at the longer-distance points and its comparative absence from the shorter-distance points. What is a reasonable action, or a reasonably remunerative rate for carriage, at a given time and place, necessarily has relation to the circumstances and conditions bearing upon the actor or upon the carrier at the time and place. The appellant does not say, and the railroad commission of Georgia did not say, and none of the witnesses called by the appellant in the cases have said, that the rates at any of the points, considered separately, are too high or are too low, or are not reasonable and just. The burden of their complaint is that the relation between the rates is wrong. It is not insisted, or even suggested, that the rates to the longer-distance points should or can be raised. Nor is it now asked that the rates to the shorter-distance points shall be lowered. It is asked only that the appellees shall be required to cease and desist from charging more for the shorter than for the longer haul. This requirement seems to have possible relation only to the fourth section of the act. It cannot adequately meet the requirements of the first and third sections, if either of them is violated by the conduct from which the appellees are required "to cease and desist." If the mere charging of a greater rate for the shorter than for the longer haul gives an undue and unjust preference to the longer-distance points, and subjects the shorter-distance points to any undue prejudice or disadvantage, it is difficult to see how the charging exactly the same rate for the shorter haul that is charged for the longer shall escape condemnation. The appellees are held to be subject to the act, and to the jurisdiction of the commission, because, by express or implied agreement, they have consented to carry freight on through bills of lading from points beyond the state of Georgia to points within that state. The sixth section of the act to regulate commerce, as originally passed and as since amended, recognizes the existence and validity of such contracts or agreements, express or implied, and makes certain provisions with reference to the action of the connecting carriers parties thereto. The act does not, however, require such connecting carriers to enter into such agreements. Nor does it authorize the commission to require through routing and billing, or to establish and fix through rates over connecting lines. Gulf, C. & S. F. Ry. Co. v. Miami S. S. Co., 52 U. S. App. 732, 30 C. C. A. 142, and 86 Fed. 407; Railroad Co. v. Platt, 7 Interst. Commerce Com. R. 323. It does not authorize the commission to fix rates in any case. Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700. The railroad commission of Georgia is authorized and required to fix rates. Acts Ga. 1878–79, pt. 1, tit. 12, No. 269, § 6. And that commission has fixed a schedule of just and reasonable rates, which is called the "Standard Tariff." Only three roads—the Western & Atlantic, the Rome Railroad (operated by the Western & Atlantic), and the Georgia Railroad—are required to observe this standard tariff of rates. All of the other roads in the state are allowed certain percentages of increase, except on classes C, D,

F, J, and P, and are allowed to charge rates from 10 to 50 per cent. higher than the standard tariff rates. The Western & Atlantic Railroad, extending from Chattanooga to Atlanta, does not lie wholly within the state of Georgia, but, being owned by the state of Georgia, and now operated by the Western & Atlantic Railroad Company under a lease from the state, is subject throughout its whole extent to the rates imposed by the Georgia commission. The competition which affects rates is at least as severe at Chattanooga as it is at Atlanta. Some of the witnesses depose that it is stronger at Chattanooga, by reason of the influence there of the Tennessee river. Various systems of connecting lines lying north and west of Chattanooga are affected by this strong competition, which has its controlling influence throughout the whole length of their lines from Ohio river points to Chattanooga, on all freight carried to that point, or to be carried through it; and hence they cannot claim more, or be forced to receive less, for carriage to that point than the competitive conditions there require. For like reasons, the Western & Atlantic Railroad Company cannot obtain more for the carriage of this competitive freight from Chattanooga to Atlanta than the difference between the rates to Chattanooga and the rates to Atlanta, which have been fixed by competition beyond the control or appreciable influence of the Western & Atlantic Railroad. Therefore, as to that competitive traffic, this road has no option as to the rate at which it will take the traffic, and must either decline to receive the freight, or must accept for its carriage the difference between the two rates which are fixed by the controlling competition. As to the intermediate stations on the Western & Atlantic Railroad, that carrier is under not the same duress, but feels its force to the extent that, for carrying the competitive freight in question from Chattanooga to Marietta, it cannot charge the full rate allowed by the Georgia commission; for, if it insisted on doing so, the freight could and would go by another route to Atlanta, and thus, instead of getting a haul of 117 miles, the distance from Chattanooga to Marietta, the Western & Atlantic could get only a haul of 21 miles, the distance from Atlanta to Marietta. Therefore, in fixing the rates to these intermediate points, the through rate to that competitive point, which, combined with the local rate from the competitive point to the point of destination, will give the lowest through rate to the noncompetitive point, controls. As the noncompetitive point thus gets the benefit of the lowest rate to any of the neighboring competitive points, and as the carriage of the competitive traffic to the respective competitive points is remunerating to the carriers to an extent that more than pays the expense of moving the competitive traffic, it is difficult to perceive how the noncompetitive points are subject to any undue or unreasonable prejudice or disadvantage by this scheme of rate-making. Our conclusion is that the circuit court did not err in refusing to enforce the orders of the commission in these cases, and therefore the decrees of that court from which these appeals are taken are affirmed.