**ADDITIVE CONTROLS & MEASUREMENT SYSTEMS, INC., Plaintiff/Counterdefendant,**

v.

**FLOWDATA, INC.,
Defendant/Counterclaimant–Appellee,**

v.

**TRUGEAR, INC. and David M. Yates,
Movants–Appellants,**

and

**Jack Harshman and Truflo
Instrumentation, Inc.,
Movants–Appellants,**

and

**Nice Instrument Services, Inc. and
Nice Instrument Sales, Inc.,
Movants–Appellants.**

Nos. 95–1490 to 95–1492.

United States Court of Appeals,
Federal Circuit.

Sept. 24, 1996.

Bruce C. Morris, Beirne, Maynard & Parsons, L.L.P., Houston, TX, argued, for defendant/counterclaimant-appellee. On the brief was William C. Norvell, Jr.

James R. Snell, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., Houston, TX, argued, for movants-appellants Trugear, Inc., David M. Yates, Jack Harshman and Truflo Instrumentation, Inc. With him on the brief was R. Tate Young, Houston, TX.

Robert H. Singleton, Jr., Singleton & Cooksey, Houston, TX, argued for movants-appellants Nice Instrument Services, Inc. and Nice Instrument Sales, Inc. Of counsel was Serena S. Williams.

William D. Durkee, Arnold, White & Durkee, Houston, TX, for plaintiff/counterdefendant.

Before PLAGER, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

In this patent case the district court entered an injunction against entities that are not parties to the underlying lawsuit. The non-parties moved to have the injunction against them vacated, and the district court denied their motions. We conclude that the district court was not authorized to grant injunctive relief against the non-parties, and we therefore direct that one paragraph of the district court's injunctive order be vacated.

I

The factual background of this appeal is complex. Appellee Flowdata, Inc., sells meters that are used to measure the flow of one liquid into another. A competitor, Additive Controls & Measuring Systems, Inc. (Adcon), sued Flowdata in 1990 in a Texas state court, claiming that Flowdata was interfering with Adcon's business by telling Adcon's customers that Adcon was infringing a patent owned by Flowdata. Flowdata removed the case to federal court and filed a counterclaim charging Adcon with infringement of its patent, U.S. Patent No. 4,815,318 (the '318 patent), and unfair competition. Flowdata subsequently added Adcon's president, Galen M.

Cotton, as a party, but then dismissed him without prejudice before trial.

Adcon did not contest the issues of validity and infringement, and after a bench trial Flowdata prevailed on its claim of unfair competition. On August 2, 1993, the United States District Court for the Southern District of Texas issued an injunction against Adcon. Flowdata then sued Cotton personally, seeking to hold Cotton liable for Adcon's patent infringement. The district court granted summary judgment to Flowdata based on issue preclusion. This court reversed, holding that under the circumstances Cotton was entitled to litigate the issues of infringement and patent validity in the action brought against him. *Flowdata, Inc. v. Cotton,* No. 95–1013, 62 F.3d 1430 (Fed. Cir. June 5, 1995) (nonprecedential opinion).

Before judgment was rendered in the Adcon case, Cotton approached appellant David M. Yates in New Mexico with a proposal to manufacture and market other flowmeters based on Cotton's designs. Yates and Cotton formed two corporations to manufacture and market the meters: TruGear, Inc., of Albuquerque, New Mexico (TruGear), which was principally owned by Yates, would manufacture the meters, and Truflo Instrumentation, Inc., of Houston, Texas (Truflo), which was principally owned by Cotton, would do the marketing. Appellant Jack Harshman, an engineer, contracted with Truflo to provide the manufacturing drawings needed to produce the meters, to be known as "Tru-Gear meters." Two companies in Baton Rouge, Louisiana, Nice Instrument Services, Inc., and Nice Instrument Sales, Inc. (the Nice companies), agreed to distribute the TruGear meters.

In November 1993, Flowdata's counsel sent a copy of the final judgment in the Adcon case to each of the appellants. Flowdata subsequently requested that the court hold Cotton in contempt of the injunction based on the TruGear venture. A contempt proceeding was held in February 1994 at which Cotton appeared, but at which none of the appellants were present. At the conclusion of the hearing, Flowdata asked that Cotton be held in contempt of the Adcon injunction, that Cotton and all of the appel-

lants be enjoined from marketing or otherwise disposing of any TruGear meters and required to provide an accounting of their sales of TruGear meters, and that Cotton be ordered to pay damages based on the amounts received from sales of TruGear meters since the date of the final judgment in the Adcon case.

On July 12, 1994, the district court entered an order styled "Order on Contempt Treated as a Supplemental Complaint for Modification of the Injunction." In the order, the court imposed sanctions against Cotton and entered provisions enjoining each of the appellants by name. The original August 2, 1993, injunction was directed to Adcon and "its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Final Judgment." To the list of those enjoined, the July 12, 1994, modified order added Cotton and each of the appellants. In addition, the order listed the TruGear meter as one of the "adjudged infringing flowmeter devices." The July 12 order also directed each of the appellants not to destroy or dispose of inventory of any flowmeters falling within the scope of the injunction; it directed them to provide an accounting of all such flowmeters made and sold since August 2, 1993; and it ordered Cotton, Yates, Truflo, and TruGear to pay Flowdata a 50 percent royalty on the sales of all TruGear meters since that date, a 25 percent royalty on the sales of all TruGear meters prior to that date, and attorneys' fees attributable to the enforcement of the injunction.

The court noted that the appellants were not parties to the underlying case between Flowdata and Adcon, but it found that each of the appellants had received notice of the original injunction and ruled that the injunction was therefore binding on them. The court also found that Cotton was an agent of Adcon, and that the appellants had "acted in concert with Cotton and participate[d] in this case with Cotton in the manufacture, use, and sale of the TruGear meter." Citing Rule 65(d), Fed.R.Civ.P., the court concluded that because that Rule provides that an injunction can be binding on those acting in concert with an enjoined party, the court was autho-

rized to enjoin Cotton and the appellants, even though they were not parties to the original action.

After receiving the July 12 order, counsel for TruGear and Yates wrote a letter to the district court advising that his clients were not parties to the Adcon lawsuit and that the court therefore lacked jurisdiction to enjoin them or to order them to pay damages to Flowdata. Counsel requested that the court reconsider its July 12 order and limit the applicability of that order to those subject to the court's jurisdiction. The court treated the letter from TruGear and Yates as a motion to reconsider the July 12 order and set a hearing on the motion for August 18, 1994. Counsel responded by advising the court that Yates and TruGear had not been properly brought before the court, they were not parties to the underlying action, and they did not consider it appropriate to make an appearance before the court at the August 18 hearing.

On October 20, 1994, the court issued a new order, which narrowed the scope of the July 12 order as it applied to the appellants. In particular, the October 20 order removed the appellants' names from the general injunctive provision, which was based on the August 2, 1993, order against Adcon. Instead, the new order enjoined Adcon and "its officers, agents, successors and assigns and those persons in active concert or participation with them who receive actual notice of this Order," together with Cotton and "his agents, servants, employees, attorneys, affiliates, successors and assigns and those persons in active concert or participation with them who receive actual notice of this Order." The new order barred any of the enjoined parties from making, using, or selling "the adjudged infringing flowmeter devices," including the TruGear meter.

The October 20 order contained only two provisions expressly naming the appellants. First, the order barred TruGear, Truflo, and the Nice companies from destroying or disposing of any TruGear flowmeters or parts for TruGear meters until further order of the court. Second, it required the four companies to provide to the court and Flowdata an accounting of all TruGear meters made, used, or sold since August 2, 1993.

The appellants subsequently filed motions under Fed.R.Civ.P. 60(b) seeking relief from the October 20 order. In an opinion dated April 25, 1995, the district court denied the motions. The court noted that the appellants appeared to have satisfied the requirement of the October 20 order that they provide an accounting of the disposition of TruGear meters made, used, and sold since August 2, 1993, and that the only specific injunctive provision still applicable to them was the order restraining TruGear, Truflo, and the Nice companies from destroying or disposing of any inventory of TruGear meters until further order of the court.

In response to the appellants' argument that the court was not empowered to enter any injunctive order against them, since they were not parties to the Adcon suit, the district court concluded that while a court ordinarily may not enjoin a non-party, there is an exception to that rule for non-parties "who have actual notice of the injunction and are guilty of aiding and abetting or acting in concert with a named defendant or his privy in violating the injunction." The court concluded that because the appellants were acting in concert with Cotton, who was in privity with Adcon, a party to the Flowmeter–Adcon suit, the appellants could be enjoined if the court could properly enjoin Cotton. The court concluded that it could enjoin Cotton, because Cotton "is legally identified with Adcon and [because] the Court has the power to enjoin Adcon, the Court also has the power to enjoin Cotton." The court therefore declined to vacate the provision of the October 20 order directing the four corporate appellants not to dispose of any TruGear meters in their possession.

The six appellants took this appeal from the district court's order denying their motion to vacate the October 20, 1994, injunction as it applied to them. Neither Adcon nor Cotton is a party to this appeal.

II

In light of the district court's October 20 modification of its injunctive order and

events following the entry of that order, there is less at issue here than might at first appear. No appellant has been held in contempt of any injunctive order, and contrary to the situation following the July 12 order, none of the appellants is named in the general injunctive provision that applies to the parties to the original Adcon case. The two individual appellants (Yates and Harshman) are not named at all in the injunctive order that is before us. The four corporate appellants (TruGear, Truflo, and the Nice companies) are named in only two provisions of the October 20 order, one prohibiting them from disposing of TruGear meters that may be in their inventory, and the other requiring an accounting of all TruGear meters they have made, used, or sold. The four corporate appellants have apparently complied with the latter provision, so any challenge to that provision is moot. Thus, the only issue before us on appeal is whether the four corporate appellants were properly restrained from destroying or disposing of any TruGear meters or parts in their possession.

### A

■ Courts do not write legislation for members of the public at large; they frame decrees and judgments binding on the parties before them. For that reason, courts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it. *See, e.g., Scott v. Donald,* 165 U.S. 107, 117, 17 S.Ct. 262, 265, 41 L.Ed. 648 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."). In *Chase National Bank v. City of Norwalk,* 291 U.S. 431, 436, 54 S.Ct. 475, 477, 78 L.Ed. 894 (1934), for example, the Supreme Court found "clearly erroneous" an injunction that was directed at "all persons to whom notice of the order of injunction should come." Writing for a unanimous Court, Justice Brandeis explained that it was improper for the district court "to make punishable as a contempt the conduct of persons who act independently and whose rights have not been adjudged according to law." 291 U.S. at 437, 54 S.Ct. at 477. "Unless duly summoned to appear in a legal proceeding," he added, "a person not a privy

[of a party] may rest assured that a judgment recovered therein will not affect his legal rights." 291 U.S. at 441, 54 S.Ct. at 479.

Judge Learned Hand made the same point earlier in a patent infringement case similar in some respects to this one. In *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832 (2d Cir.1930), the district court entered an injunctive decree against one defendant. The plaintiff then sought and obtained contempt sanctions against Joseph Staff, a former employee of the defendant, who had been dismissed as a party to the original case before the entry of the injunction. The plaintiff argued that the injunction should be construed as applying by its terms to Staff, but the court of appeals rejected that argument and reversed. The court held that the district court was not authorized to issue an injunction against Staff, since he was not a party to the underlying action. The court explained:

> [N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court.

42 F.2d at 832–33. *See also Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 13, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945) (courts may not grant an injunction "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law"); *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 180, 94 S.Ct. 414, 423, 38 L.Ed.2d 388 (1973); *Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. 229, 234–35, 38 S.Ct. 65, 66–67, 62 L.Ed. 260 (1917); *Kean v. Hurley,* 179 F.2d 888, 890–92 (8th Cir.1950). *See generally Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969) ("one is not bound by a judgment

in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process").

As the district court in this case pointed out, the prohibition against entering an injunction against non-parties does not mean that non-parties may not be held in contempt of court for violating injunctions directed at others. Courts have carefully distinguished between entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted. As Judge Hand explained in *Alemite,* 42 F.2d at 833:

> [T]he only occasion when a person not a party may be punished is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has the power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him.

The court thus concluded that the non-party, Joseph Staff, could be held in contempt of the injunction against his former employer (the enjoined party) if, but only if, Staff aided and abetted his former employer in violating the injunction. Staff could not be held in contempt for acts performed independently of his employer.

■ Those principles govern this case. Rule 65(d), which codified the common law rules the court set forth in *Alemite,* provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Thus, those who act in concert with an enjoined party may be held in contempt, but only for assisting the enjoined party in violating the injunction. *See Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 903 F.2d 1568, 1580–81, 14 USPQ2d 1913, 1923 (Fed. Cir.1990).

■ Pursuant to Rule 65(d), the August 2, 1993, decree subjected the appellants (and anyone else with notice of the injunction) to contempt sanctions if they were found, after proper notice and a hearing, to have acted in concert with Adcon to violate the injunction. Because they were not parties to the Adcon case, however, the appellants could not be enjoined from engaging in independent conduct with respect to the subject matter of that suit, and the August 2, 1993, decree could not be interpreted to impose any such duty upon them. The October 20, 1994, modification of the decree imposed obligations directly on the appellants and to that extent is in error. Because the appellants were never made parties to the underlying action and thus never had an opportunity to contest the findings of liability in that case, they are not subject to being enjoined or held in contempt with respect to their independent conduct regarding the subject matter of the Flowdata–Adcon case.

In particular, the paragraph of the injunction that enjoins the corporate appellants from destroying or otherwise disposing of TruGear flowmeters in their possession is inconsistent with the general principle that a non-party to an action may not be enjoined in that action. That paragraph of the decree also cannot be justified as an application of Rule 65(d), since it does not govern the appellants' conduct solely as it relates to their activities in concert with an enjoined party. *See Chase Nat'l Bank,* 291 U.S. at 436–37, 54 S.Ct. at 477 (naming non-parties in an injunction cannot expand the non-parties' liability beyond the scope defined by Rule 65(d), but "merely makes explicit as to them that which the law already implies").

The rationale underlying the district court's entry of the order against the four corporate appellants—that Cotton was an agent of Adcon and that the four appellants worked closely with Cotton—does not justify imposing injunctive relief against the appellants, any more than Joseph Staff's close relationship with the parties in the *Alemite* case justified construing the injunction in that case to apply to him. Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to con-

tempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity.

Accordingly, absent some exception applicable in this case to the general equitable principles discussed above, the paragraph of the October 20 order requiring the appellants not to dispose of any TruGear meters or parts in their possession must be vacated. We therefore turn to the question whether there are any special circumstances applicable here that justify finding this case to present an exception to the general rule.

### B

Flowdata argues that the paragraph of the October 20 order that enjoins the corporate appellants from "destroying or otherwise disposing of any inventory of any TruGear flowmeters and/or any parts thereof, until further Order of this Court" is justified by the All Writs Act, 28 U.S.C. § 1651, because the prohibition directed to the corporate appellants in the October 20 order was necessary to effectuate and prevent the frustration of its judgment in the underlying action between Flowdata and Adcon.

■ It is true that the All Writs Act authorizes courts in certain circumstances to issue directives to persons who are not parties to an underlying lawsuit. Thus, a federal court may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in the exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). Based on that rationale, the Court held in the *New York Telephone Co.* case that the All Writs Act authorized a district court to require a telephone company to cooperate with the installation of a pen register device; federal law authorized courts to issue pen register orders, but absent the cooperation of the telephone company, such orders would be entirely ineffective. Because a directive requiring cooperation by the telephone company was necessary to give effect to a pen register order, the Supreme Court held that the All Writs Act could be used to fill the statutory gap that, if not filled, would render the court's pen register order meaningless.

The Fifth Circuit has applied that rationale to uphold an injunction issued against non-parties who threatened racial disorder that would interfere with the effectuation of the court's desegregation decree. *See United States v. Hall*, 472 F.2d 261 (5th Cir.1972). The court of appeals explained that a district court is authorized to issue orders necessary to preserve its ability to render judgment in a case before it, *see* 472 F.2d at 265, and that the order directed to non-parties was justified on that ground.

The court in *Hall* made clear that the extraordinary remedy of enjoining non-parties must be reserved for extraordinary cases, in which the activities of third parties threaten to undermine the court's ability to render a binding judgment in the case before it. Nothing in that case or elsewhere suggests that the All Writs Act can be employed as a general license for district courts to grant relief against non-parties whenever such measures seem useful or efficient. Most of the cases cited by Flowdata involve requests for a federal court to stay litigation in another forum on the ground that the other litigation would undermine the court's ability to enter an effective judgment. The All Writs Act has traditionally been invoked in those instances, and in fact the use of the All Writs Act in that setting is specifically addressed by a separate statutory provision. *See* 28 U.S.C. § 2283.

■ The Supreme Court has been careful to limit the All Writs Act to cases in which the requested relief is necessary to give effect to an order that the court is authorized to grant, *i.e.*, to cases in which the court could not otherwise discharge its assigned duties. As the Court explained in *Pennsylvania Bureau of Correction v. United States Marshals Serv.*, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985), the All Writs Act "is a residual source of authority to issue writs that are not otherwise covered by statute.... Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize

them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."

That principle applies here. Although an injunctive order prohibiting non-parties from disposing of TruGear meters may be more efficient than a separate lawsuit against those parties, the All Writs Act does not authorize that kind of adjudicative shortcut. With regard to their independent activities (*i.e.*, activities independent of Adcon or Cotton), the corporate appellants are entitled to contest their liability and the appropriateness of equitable relief in a lawsuit in which they are named as parties.

The order directing the appellants not to dispose of the TruGear meters is in effect an open-ended injunction against the sale of those meters directed to entities that have not had an opportunity to contest Flowdata's assertion that those meters infringe a valid patent. It is true that the district court has made a determination that the '318 patent is valid (in the suit between Flowdata and Adcon) and that the TruGear meters infringe that patent (in the contempt proceeding to which Flowdata and Adcon were the only parties). But, absent collateral estoppel (which Flowdata does not advocate here), those rulings do not apply to entities such as the appellants, which have not had an opportunity to litigate those issues in a case in which they were named as parties. If Flowdata wishes to obtain permanent injunctive relief against the appellants based on their independent activities, it cannot do so by seeking an injunction against them in a case to which they are not parties; it must, instead, validly serve them and obtain an adjudication of infringement against them.

Flowdata argues that if the district court may not enjoin parties such as the appellants without initiating a new lawsuit against them, the appellants will be able to stay one step ahead of the court simply by shifting operations to a new corporate entity each time Flowdata discovers them engaging in infringing activity. That argument assumes that the appellants will be willing to run the risk of a suit for infringement with a request for enhanced damages and attorneys' fees, a risk that the appellants are likely to run only if

they are confident that they can prevail on the issue of liability. Moreover, if Flowdata can establish that a particular entity is simply a successor entity that has been created in order to evade the original injunction, that entity may be found to be acting "in active concert or participation" with the enjoined party and thus subject to contempt under Rule 65(d). *See Kloster Speedsteel, AB v. Crucible, Inc.*, 793 F.2d 1565, 1582–83, 230 USPQ 81, 92–94 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987); *People of State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) ("an organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form, and in appropriate circumstances a court is authorized to enforce its order against a successor of the enjoined organization"). All our ruling does is to prohibit the district court from entering an injunction against a non-party that regulates the non-party's conduct independent of any complicity with an enjoined party. That prohibition stems from the basic principle that an injunction ordinarily cannot be imposed on a non-party that has not had the opportunity to contest its liability.

### III

In the district court, TruGear and Yates sought sanctions against Flowdata under Rule 11, Fed.R.Civ.P., with respect to Flowdata's request for relief against them. The district court denied the appellants' request for sanctions. While we have granted relief to the appellants with respect to one paragraph in the October 20, 1994, injunction, we affirm the district court's denial of Rule 11 sanctions against Flowdata.

We do not need to decide whether there could ever be a case in which it would be an abuse of discretion for a court to deny Rule 11 sanctions even though the legal position said to be sanctionable was accepted by the district court. It is enough to say that this case presented difficult legal and factual issues that resulted in several thoughtful opinions by the district court. We have examined the pleadings Flowdata filed in the

district court and find nothing sanctionable in Flowdata's submissions to that court.

Nor do we find that Flowdata's counsel have demonstrated, in this court, "disregard for their obligation to support their positions by relevant legal authority," as the appellants contend. In virtually every case, an appellate court finds one party's arguments and authorities unpersuasive, but that is not remotely sufficient to make the losing party's conduct sanctionable. Flowdata submitted well-researched arguments in a professional manner that have assisted this court in addressing the issues in this case. We find no basis for issuing sanctions against Flowdata based on the arguments it has made in support of the district court's ruling.

The parties shall bear their own costs for this appeal.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*