**ADDITIVE CONTROLS & MEASUREMENT SYSTEMS, INC., Plaintiff/Counterclaim Defendant–Appellant,**

and

**Galen M. Cotton, Movant–Appellant,**

and

**Jack D. Harshman and Truflo Instrumentation, Inc., Movants–Appellants,**

and

**Trugear, Inc. and David M. Yates, Movants,**

and

**Nice Instrument Services, Inc. and Nice Instrument Sales, Inc., Movants,**

v.

**FLOWDATA, INC., Defendant/Counterclaimant–Appellee.**

No. 98–1035.

United States Court of Appeals, Federal Circuit.

Sept. 2, 1998.

Rehearing Denied; In Banc Suggestion Declined Oct. 8, 1998.

ment flowmeters that were determined to infringe Flowdata's United States Patent No. 4,815,318. Appellants Galen M. Cotton, Jack D. Harshman, and Truflo Instrumentation, Inc., (Truflo) were subsequently determined to be in contempt of that injunction and were assessed civil contempt penalties in the amount of Flowdata's damages and attorney fees. We affirm the district court's contempt findings with respect to Cotton and Truflo, but reverse the portion of the court's order holding Harshman in contempt.

I

At one time, AdCon and Flowdata were competitors in the market for positive displacement flowmeters, which are used to measure the flow of liquids. Following a trial, AdCon was found to have willfully infringed Flowdata's patent and engaged in unfair competition. The district court subsequently entered an injunction barring AdCon from further sales of its infringing meter or any colorable imitations.

Shortly after the injunction was issued in August 1993, Flowdata began investigating sales of a redesigned positive displacement flowmeter by AdCon's president and majority stockholder, Galen Cotton. Flowdata requested that the district court institute contempt proceedings to determine whether the new meter was being marketed in violation of the injunction. Ultimately, Cotton and the other two appellants, Harshman and Truflo, were found to be in contempt of the injunction for their roles in developing and marketing the new flowmeter.

The sequence of events preceding the contempt findings is complicated and requires some additional explanation. In February 1994, the district court held a three-day show-cause hearing with testimony from Cotton and experts for both AdCon and Flowdata. The testimony adduced at the hearing established that Cotton had designed the new flowmeter during the pendency of the patent infringement suit and had enlisted Harshman to develop the engineering drawings for the new meter. Cotton then participated in forming two companies, Truflo and TruGear, Inc., to produce and manufacture the new meters, which were to be marketed

William D. Durkee, Arnold, White & Durkee, P.C., Houston, Texas, argued for plaintiff/counterclaim defendant-appellant and movants-appellants. With him on the brief was R. Tate Young, for movants-appellants Jack D. Harshman and TruFlo Instruments, Inc.

William D. Norvell, Jr. Beirne, Maynard, & Parsons, L.L.P., Houston, Texas, argued for defendant/counterclaimant-appellee.

Before CLEVENGER, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

Following a trial, the United States District Court for the Southern District of Texas issued an injunction prohibiting Additive Controls & Measurement Systems, Inc., (AdCon) from selling certain positive displace-

as "TruGear meters." Cotton maintained a majority interest in Truflo, with Harshman receiving a 10% share for his efforts. Neither Harshman nor Truflo participated in the February 1994 contempt proceeding.

Following the February 1994 hearing, the district court concluded that the TruGear meters were merely colorable variations of the infringing AdCon meter and held Cotton in contempt of the 1993 injunction. In an order issued in October 1994, Harshman, Truflo, and several other non-parties were enjoined from disposing of inventory of the TruGear meter and ordered to show cause why they should not be held in contempt for actively participating with Cotton in violating the court's injunction. The part of the court's order enjoining the non-parties was later vacated by this court in *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 40 U.S.P.Q.2d 1106 (Fed.Cir.1996).

The show cause hearing was held in March 1995. The non-parties, including Harshman and Truflo, appeared and presented evidence regarding the extent of their participation with Cotton in designing and selling the TruGear meter. In September 1997, the district court issued an order dismissing several non-parties, including TruGear, Inc., from the contempt action but finding that Harshman and Truflo had actively participated with Cotton in violating the injunction. Harshman and Truflo were made jointly and severally liable with Cotton for Flowdata's damages and attorney fees, an amount in excess of $350,000. This appeal followed.

## II

■ The first issue in this appeal is whether it was permissible for the district court to try issues relating to the TruGear meter in a contempt proceeding. Appellants argue that the contempt findings in this case must be vacated because the contempt proceeding should never have been convened. Instead, according to appellants, Flowdata should have been required to litigate its claims regarding the TruGear meter in a separate infringement action. We review the district court's decision to proceed via a contempt hearing for abuse of discretion. *See KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1530, 227 U.S.P.Q. 676, 682 (Fed. Cir.1985).

■ Before entering a finding of contempt of an injunction in a patent infringement case, a district court must address two separate questions. The first is whether a contempt hearing is an appropriate forum in which to determine whether a redesigned device infringes, or whether the issue of infringement should be resolved in a separate infringement action. *See KSM*, 776 F.2d at 1530–32, 227 U.S.P.Q. at 682–84. That decision turns on a comparison between the original infringing product and the redesigned device. If the differences are such that "substantial open issues" of infringement are raised by the new device, then contempt proceedings are inappropriate. *Id.* at 1532, 776 F.2d 1522, 227 U.S.P.Q. at 683–84. If contempt proceedings are appropriate, the second question the district court must resolve is whether the new accused device infringes the claims of the patent. *See id.* at 1528–30, 776 F.2d 1522, 227 U.S.P.Q. at 680–82. Within those general constraints, the district court has broad discretion to determine how best to enforce its injunctive decrees. *Id.* at 1532, 776 F.2d 1522, 227 U.S.P.Q. at 684.

■ The district court in this case recognized its responsibility to compare the TruGear meter both to the original AdCon meter and to the patent claims. Following the testimony of Flowdata's expert, the court denied Cotton's motion to dismiss the contempt proceedings. Subsequently, after considering all the evidence, the court issued an opinion characterizing the TruGear meter as a mere colorable variation of the AdCon meter. In the same opinion, the court compared the TruGear meter to the patent claims and found infringement. Although our case law suggests that the need for expert testimony counsels against the use of contempt proceedings to try infringement, the district court satisfied the procedural requirements of *KSM* by separately analyzing the questions whether contempt proceedings were appropriate and whether the redesigned device infringed the patent.

**1350**

On the merits, the district court did not abuse its discretion in finding that the TruGear meter raised no substantial open questions of infringement and infringed the claims of Flowdata's patent. The TruGear meter differs from the AdCon meter principally by including a ball-bearing sleeve and by using different-sized rotors to measure flow. In addition, the main chamber of the TruGear meter is round rather than oval-shaped. The court found that those differences did not raise a substantial new question of infringement because the configuration of the main chamber and the relative size of the two rotors were not elements of the pertinent patent claim, and because the evidence at the hearing suggested that the bearings in the TruGear meter were not necessary for its operation and were included merely in an attempt to disguise the actual operation of the device.

The appellants argued that the preamble to the pertinent claim of Flowdata's patent referred to the claimed meter as "bearingless," and that the TruGear meter did not infringe because it was not "bearingless." The district court, however, concluded that the term "bearingless" in the preamble was not a limitation of the claim. That question of claim construction was a new issue in the case, because in the original infringement trial AdCon had stipulated that its flowmeter met every limitation of Flowdata's patent. The presence of a new issue, however—even a new issue of claim construction—does not necessarily require that a separate infringement action be brought to determine whether the accused device infringes the patent in suit. Contempt proceedings are appropriate as long as the new issue does not raise a substantial question of infringement.

In this instance, the district court found that the issue of the proper construction of the term "bearingless" in Flowdata's claim did not give rise to a substantial question of infringement. The court's conclusion in that regard was supported by evidence at the hearing that the term "bearingless," as used in the patent, simply meant that bearings were not necessary for the operation of the claimed meter. Under the circumstances, it was therefore permissible for the court to resolve the claim construction issue in the course of the contempt proceedings and to

conclude that the sale of the TruGear meter violated the injunction and infringed Flowdata's patent.

Appellants also argue that the contempt proceeding was inappropriate because AdCon did not contest infringement or the validity of Flowdata's patent in the underlying action. For that reason, the appellants contend that they are not subject to issue preclusion on those issues and that "substantial open questions" of infringement and validity necessarily remain, which cannot properly be addressed in a contempt proceeding. The judgment against AdCon, however, established for purposes of this litigation that Flowdata's patent was valid and that the AdCon meter infringed the patent. In a contempt proceeding to enforce the injunction entered as a part of that judgment, the only available defense for anyone bound by the injunction was that the TruGear meter did not infringe (or that it was more than a colorable variation of the first meter, thus requiring that the issue of infringement be resolved through a separate infringement action). Validity and infringement by the original device were not open to challenge. See *KSM*, 776 F.2d at 1529, 227 U.S.P.Q. at 681. Thus, the fact that AdCon did not contest infringement at the original trial did not bar the district court from concluding that there were no substantial open issues of infringement and that it was appropriate to proceed by way of contempt.

Finally, Cotton argues that because he had secured a patent on the TruGear device, there were necessarily "substantial open issues" presented that were not appropriate for resolution in a contempt proceeding. We agree that in some instances a showing that a redesign has resulted in the issuance of a patent would be sufficient to require a separate lawsuit to litigate any potential infringement by the redesigned device. The file history of Cotton's patent, however, shows that neither the original AdCon meter nor the Flowdata patent was submitted to the patent examiner. In fact, only two references, patents from 1968 and 1976, were cited as prior art as a result of the examiner's own search. Under those circumstances, the fact that the TruGear meter

design was patented does not demonstrate that the redesigned meter was more than colorably different from the AdCon meter.

### III

Appellants next contend that the injunction entered by the district court did not cover their activities with respect to the TruGear meter. Flowdata's suit was brought against AdCon, and AdCon was the only entity named in the district court's August 1993 injunction. Appellants argue that the injunction therefore reaches only conduct by AdCon or by others acting in concert with AdCon. Because all parties agree that AdCon has been inactive since the entry of the injunction and has no interest in the TruGear meter, appellants conclude that they cannot be held in contempt.

■■■ In an earlier appeal in this case, we addressed the basic rules concerning enjoining non-parties. *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 96 F.3d 1390, 40 U.S.P.Q.2d 1106 (Fed.Cir.1996). This appeal, by contrast, involves holding non-parties in contempt of an injunction. The two are quite different. As a general matter, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated. *See Chase Nat'l Bank v. City of Norwalk,* 291 U.S. 431, 436–37, 54 S.Ct. 475, 78 L.Ed. 894 (1934). Non-parties may be held in contempt, however, if they "either abet the defendant, or [are] legally identified with him." *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir.1930). That common-law principle is reflected in the text of Rule 65(d), Fed. R. Civ. Proc., which states that an injunction is binding on parties and "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert and participation with them who receive actual notice of the order by personal service or otherwise." As the Supreme Court has stated, the effect of an injunction on non-parties "depends on an appraisal of [their] relations and behavior [with the enjoined party] and not upon mere construction of terms of the order." *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 15, 65 S.Ct. 478, 89 L.Ed. 661 (1945). We therefore address the contempt orders entered against Cotton, Harshman, and Truflo individually. We conclude that while there is sufficient

evidence to find Cotton and Truflo in contempt of the injunction, the contempt finding against Harshman must be reversed.

### A

■■ Cotton was held in contempt of the August 1993 injunction for his actions in developing and marketing the TruGear meter. The district court's finding of contempt was predicated on its determination that Cotton was "legally identified" with AdCon and thus subject to the injunction even though he was not a named party to the suit. We review that decision and other subsidiary factual findings in contempt proceedings for clear error. *See Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir.1995).

■■ As an initial matter, it is clear that Cotton was bound by the injunction when it was entered against AdCon in August 1993, even though Cotton was not a named party to the underlying infringement suit. Rule 65(d) specifically names "officers" of a defendant as among those who are bound by an injunction, and there is a substantial body of case law in support of that proposition. *See Wilson v. United States,* 221 U.S. 361, 376, 31 S.Ct. 538, 55 L.Ed. 771 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs."); *Reich v. Sea Sprite Boat Co.,* 50 F.3d 413, 417 (7th Cir. 1995) ("An order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents."). At the time the August 1993 injunction was issued, Cotton was the president of AdCon, and he has remained its majority shareholder.

■■■ Although directed at AdCon, the injunction did not necessarily lapse with the cessation of AdCon as a working business. An injunction may survive the dissolution of the corporation at which it is directed and continue to bind any successor in interest to the original defendant. *See Walling v. James V. Reuter, Inc.,* 321 U.S. 671, 674, 64 S.Ct. 826, 88 L.Ed. 1001 (1944) (injunction may be enforced "against those to whom the business may have been transferred, whether as a means of evading the judgment or for

other reasons"); *ICC v. Rio Grande Growers Coop.*, 564 F.2d 848, 849 (9th Cir.1977). Such a rule is necessary to prevent an enjoined defendant from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear*, 324 U.S. at 14, 65 S.Ct. 478.

■ Cotton asserts that once he resigned as an officer of AdCon and acted "independently" in developing the TruGear meter, the August 1993 injunction no longer regulated his conduct. Cotton is correct in asserting that an employee of an enjoined corporation. is usually not bound by an injunction after severing relations with the corporation. In *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832 (2d Cir.1930), for example, the court held that an injunction in a patent infringement case entered against a corporation did not bind an employee who resigned from the company and committed infringing acts identical to those adjudicated in the original suit. The court's rationale in *Alemite*, however, was that the employee acted independently after his resignation and was not legally identified with the defendant corporation. Thus, Cotton's reliance on *Alemite* is availing only if the district court erred in finding that he was legally identified with AdCon.

■ The question whether a corporate officer is "legally identified" with a corporation is a case-specific inquiry. In general, an officer is legally identified with a corporation if the officer is "so identified in interest with those named in the decree that it would be reasonable to conclude that [his] rights and interests have been represented and adjudicated in the original injunction proceeding." 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2956, at 340–41 (2d ed.1995); *see also G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 37 (1st Cir.1980) (officer is legally identified with the corporation if the officer "had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction"). Factors that may be pertinent to the inquiry are the officer's position and responsibilities in the enjoined corporation, his participation in the litigation that preceded the entry of the injunction, and the degree of similarity between his activities in the old and new businesses. *See G. & C. Merriam Co.*, 639 F.2d at 37–38.

■ The district court made a number of factual findings relevant to its conclusion that Cotton was legally identified with AdCon. Cotton was the incorporator and sole shareholder of AdCon when it was formed. At all times Cotton owned at least 90% of AdCon's stock. Cotton served as president of AdCon throughout the litigation with Flowdata, and he represented AdCon's interests in that litigation. The district court also found that AdCon had operated out of Cotton's home for some period of time, the same location from which Cotton started and operated Truflo. Cotton's testimony indicated that the reason for forming Truflo to market the TruGear meter was that "AdCon was not in a position to obtain partners for [the] purpose of manufacturing anything." The court also noted that Cotton's work on the TruGear meter began while Cotton was still serving as AdCon's president.

Based on those findings, which Cotton does not dispute, we see no clear error in the district court's conclusion that Cotton was legally identified with AdCon and therefore remained subject to contempt sanctions for violating the injunction even after resigning from his position as AdCon's president. The factual context outlined above is similar to that described in *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413 (7th Cir.1995). In that case, a closely held corporation was enjoined by the Department of Labor from committing certain safety violations. Rather than comply, the corporation's owner and president caused the corporation to cease operating and started a new corporation to continue the same activity. *Id.* at 417. The Seventh Circuit held that both the owner and the new corporation were bound by the injunction entered against the old corporation. In this action as well, Cotton's legal identification with AdCon precluded him from acting independently in the field of flowmeters of the type subject to the injunction.

Apart from asserting that he is not liable for contempt because he was not a party to the underlying action, Cotton also argues that previous mandates of this court and the

district court show that the contempt finding is erroneous. We address those issues briefly.

First, Cotton contends that the district court found him in contempt based on his actions "in active concert or participation" with AdCon, although AdCon has been dormant for years. If that were the basis for the contempt finding, we would agree; one cannot act in concert with an inactive corporation. Cotton's liability, however, stems from the district court's finding that he was legally identified with AdCon. Under that theory of liability, Cotton was bound by the injunction against AdCon just as if it had been directed to him personally.

Cotton also argues that an opinion of this court, issued in a separate infringement action brought by Flowdata against Cotton personally, demonstrates that before being held in contempt Cotton was entitled to an opportunity to litigate the questions whether the AdCon meter infringed Flowdata's patent and whether Flowdata's patent was valid. In that opinion, we held that Cotton was not bound by the findings in the AdCon suit because the issues of infringement and validity had not been "actually litigated." *See Flowdata, Inc. v. Cotton*, No. 95–1013, 62 F.3d 1430, 1995 WL 453390, slip op. at 4 (Fed.Cir. Jun. 5, 1995) (unpublished opinion). Issue preclusion, however, only determines what issues may or may not be raised in a separate proceeding. The findings concerning validity and infringement of Flowdata's patent were binding in the case in which they were entered, and the district court had the power to hold Cotton in contempt for violating the injunction entered in that case.

Finally, Cotton argues that our previous opinion in this case addressing the power of a district court to enjoin non-parties somehow prohibits the district court from holding him in contempt. *See Additive Controls & Measurement Sys., Inc.*, 96 F.3d at 1390, 40 U.S.P.Q.2d at 1106. In that opinion, however, we simply stated that the district court could not enter an injunction restraining the independent conduct of non-parties who had not appeared before the court. *Id.* at 1397, 40 U.S.P.Q.2d at 1112. Here, Cotton has been held in contempt of an injunction that was lawfully entered and that bound him

personally. Nothing in our prior opinion prevented the district court from taking that action if the facts so warranted, as they did in this case.

## B

Harshman was also found in contempt for his actions taken with respect to the TruGear meter. Because Harshman had no relationship with AdCon, his contempt finding can be sustained only if he acted "in active concert and participation" with Cotton to violate the injunction. In view of the applicable requirements for finding active concert and participation in the Fifth Circuit, we conclude that the contempt sanctions against Harshman must be reversed.

The general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191–93, 69 S.Ct. 497, 93 L.Ed. 599 (1949). Non-parties are differently situated. Non-parties are subject to contempt sanctions if they act with an enjoined party to bring about a result forbidden by the injunction, *see Regal Knitwear*, 324 U.S. at 14, 65 S.Ct. 478; *Chase Nat'l Bank*, 291 U.S. at 436–37, 54 S.Ct. 475, but only if they are aware of the injunction and know that their acts violate the injunction, *see Waffenschmidt v. MacKay*, 763 F.2d 711, 723–26, 726 (5th Cir.1985) ("Although good faith is irrelevant as a defense to a civil contempt order, good faith is relevant to whether [a non-party] aided or abetted [an enjoined party] in dissipating the funds with knowledge that it was violating the court's orders.").

Harshman argues that because he did not work with AdCon during the period the injunction was in effect, he cannot be liable for acting in active concert and participation with an enjoined party. That assertion is incorrect, because Harshman dealt with Cotton, and Cotton was subject to the injunction by virtue of his legal identification with AdCon. Harshman's contention is more properly directed at the scienter requirement for acting in active concert and participation. For Harshman to be aware that he was acting in violation of the injunction, he would

have to be aware both that his acts were proscribed and that Cotton was bound by the injunction.

In determining that Harshman had acted knowingly and in concert with Cotton to violate the injunction, the district court relied on Harshman's course of conduct throughout this extended litigation. Harshman testified as an expert witness for AdCon at the first trial for a minimal fee. Harshman also produced the engineering drawings for the TruGear meter, working from a prototype developed by Cotton. As partial compensation for his work on the drawings, Harshman received a 10% interest in Truflo. He also served as Truflo's director of engineering. Finally, Harshman accepted a $25,000 payment for the drawings on July 12, 1994, the day that the court issued its first injunction against the TruGear meter. Despite the deference we accord to the district court in light of that court's familiarity with this extended litigation, we do not believe that the evidence summarized above supports the court's conclusion that Harshman knowingly acted in concert with Cotton to violate the injunction, particularly in light of the timing of the injunction and the evidence regarding when Harshman learned of it.

Although the injunction issued in August 1993, Harshman did not receive actual notice of the injunction until December 29, 1993. Because actual notice is a requirement for contempt based on active concert and participation with an enjoined party, only those acts of Harshman that took place after December 29, 1993, can serve as a basis for contempt. Evidence at the March 1995 contempt hearing established that all of the drawings that Harshman produced for the TruGear meter, with the possible exception of a three-inch diameter meter that was never manufactured, were done before Harshman received notice of the injunction. Similarly, Harshman's service to AdCon as an expert witness and his long association with Cotton do not establish contempt of the court's order. At most, that evidence tended to show that Harshman was aware that Cotton was legally identified with AdCon.

Other evidence adduced at the contempt hearing further suggests that Harshman did not act in knowing violation of the injunction. Harshman testified that when he learned of the injunction, he questioned both Cotton and a patent attorney as to whether the TruGear meter was affected by the injunction. Both assured Harshman that the meter was not covered by Flowdata's patent and did not violate the injunction. Although those opinions turned out to be incorrect, that evidence would tend to indicate that Harshman did not knowingly violate the injunction.

The only acts that can be ascribed to Harshman after he learned of the AdCon injunction are his receipt of the $25,000 payment and his occasional contacts with TruGear, Inc., the company that made the TruGear meters, to discuss manufacturing difficulties. Harshman's acceptance of the $25,000 does not suggest knowing complicity with Cotton in view of the large amount of time Harshman spent preparing the drawings, and Flowdata does not argue that Harshman was aware of the court's order enjoining the TruGear meter when Harshman accepted that money. Finally, there was nothing about Harshman's acts of providing advice to the manufacturer that would indicate that he acted with knowledge that his conduct violated the injunction. We therefore reverse that aspect of the district court's order holding Harshman in contempt.

### C

Truflo was held in contempt of the August 1993 injunction on a theory of successor liability. Following the March 1995 contempt hearing, the district court found that Cotton had formed Truflo as a means of evading the court's injunction against AdCon, and that Truflo was therefore acting in active concert and participation with Cotton to avoid the injunction.

An injunction would be of little value if its proscriptions could be evaded by the expedient of forming another entity to carry on the enjoined activity. For that reason, courts have consistently held that "successors" are within the scope of an injunction entered against a corporation and may be held in contempt for its violation. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *Regal*

*Knitwear,* 324 U.S. at 14, 65 S.Ct. 478; *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.,* 91 F.3d 914, 919–20, 39 U.S.P.Q.2d 1580, 1584 (7th Cir.1996).

Truflo argues that it cannot be a successor to AdCon because it inherited none of AdCon's assets and as such would not have been regarded as a successor corporation under Texas law. That argument misses the mark, however, because the question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law. Prior to the adoption of the Rules of Civil Procedure, federal courts applied general principles of equity, or federal common law, to determine the scope of an injunction. *See, e.g., Ex parte Lennon,* 166 U.S. 548, 554–57, 17 S.Ct. 658, 41 L.Ed. 1110 (1897) (injunction bound non-party employee of enjoined corporation); *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir.1930) (injunction did not cover employee who left enjoined employer); *ICC v. Western N.Y. & P.R. Co.,* 82 F. 192, 194–95 (W.D.Pa.1897) (injunction entered by ICC order bound successors to enjoined railroads). Rule 65(d) codified the pre-rules precedents as to what constitutes privity, *see* 11A Wright et al., *supra,* § 2956, at 350; *Regal Knitwear,* 324 U.S. at 14, 65 S.Ct. 478, and courts have continued to look to federal law in determining the reach of federal injunctions under Rule 65(d), *see Golden State Bottling Co.,* 414 U.S. at 179–80, 94 S.Ct. 414 (applying Rule 65(d) to enforce an NLRB order against a corporation that would not be considered a successor to debts and liabilities under state law); *Vacco v. Operation Rescue Nat'l,* 80 F.3d 64, 70 (2d Cir.1996) (finding successor liability without reference to state law). We therefore reject the argument that Texas corporate law governs the question whether Truflo is a successor to AdCon for purposes of deciding if Truflo is subject to the district court's injunction.

In a series of cases, the Supreme Court described successorship liability as turning on whether there is a "substantial continuity of identity" between the two organizations. *See Howard Johnson Co. v. Detroit Local Joint Executive Bd.,* 417 U.S. 249, 263–64, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Golden State Bottling Co.,* 414 U.S. at 182, 94 S.Ct. 414; *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 551, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Although the original formulation of the test arose in the labor relations context, the "substantial continuity of identity" test has been adopted as a general expression of the degree of closeness that Rule 65(d) requires for a non-party successor to be subject to the injunction. *See Operation Rescue Nat'l,* 80 F.3d at 70. We apply that standard in reviewing the district court's finding that Truflo was a successor to Ad-Con.

In making its finding on that issue, the district court properly recognized that Cotton was the incorporator, president, and majority stockholder of both AdCon and Truflo, and that both entities shared phone lines and office space at his home. In our previous opinion, we noted that any entity "created in order to evade the original injunction" could be subject to contempt under Rule 65(d). *Additive Controls & Measurement Sys., Inc.,* 96 F.3d at 1397, 40 U.S.P.Q.2d at 1112. The facts as found by the district court adequately support its conclusion that Truflo was such an entity formed to evade the injunction.

Truflo raises the additional claim that it was not afforded procedural due process in the proceedings leading to the contempt citation against it, because it was never served with process under Rule 4(a), Fed. R. Civ. Proc., nor made a party to a lawsuit. Truflo's first contention fails because it is well established that formal service is not required in a contempt proceeding. *See* 11A Wright et al., *supra,* § 2956, at 338 ("the amenities of original process need not be followed" if the person charged with contempt has actual knowledge of the injunction).

Truflo is correct, however, in asserting that parties to a contempt proceeding are entitled to adequate notice and an opportunity to be heard. *See Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925). In order to show that Truflo was in contempt of the injunction, Flowdata was required to prove by clear and convincing evidence that the TruGear meter was pro-

duced in violation of the injunction and that Truflo itself was subject to the injunction, either as a successor to AdCon or as an instrumentality of Cotton formed to evade the injunction. Truflo was entitled to an opportunity to challenge Flowdata's showing and present its own evidence on those issues.

■ The contempt proceedings in this case included two extended hearings held to address the conduct that was alleged to constitute contempt. In February 1994, Cotton appeared before the court, and issues pertaining to the violation of the injunction by the TruGear meter were litigated. Although Truflo was not a party to those proceedings, the district court made a factual finding after the hearing that "Cotton caused the formation of Truflo . . . for the purpose of thwarting and avoiding the Court's August 2, 1993, injunctive Order."

On its own, that finding would not provide a sufficient basis for holding Truflo in contempt, because Truflo was not given notice prior to the February 1994 hearing that it was subject to contempt sanctions based on evidence introduced at that hearing. The district court remedied that problem, however, by holding an additional hearing in March 1995. At that hearing, Truflo presented evidence concerning the extent of its involvement with Cotton in developing and marketing the TruGear meter. After that hearing, the district court indicated that it intended to reconsider its previous rulings regarding contempt liability. Subsequently, the district dismissed several non-parties from the contempt proceeding, but it reconfirmed its earlier factual findings that Truflo was a mere successor to AdCon that had been formed for the purpose of evading the injunction.

Those proceedings satisfied Truflo's rights to notice and an opportunity to be heard. Truflo argues that it did not have a sufficient opportunity to be heard because it did not have the opportunity to contest infringement and violation of the injunction by the Tru-Gear meter. The district court's findings regarding Truflo's status as a successor entity, however, establish that Truflo had no independent identity outside of Cotton and AdCon. For that reason, it was not error for the district court to deny Truflo an opportunity to contest the other elements of the contempt charge. Accordingly, we uphold the district court's finding that Truflo was subject to contempt sanctions because, as a successor to AdCon, it was bound by the injunction.

## IV

■ Appellants also raise a separate challenge to the terms of amendments to the injunction that the district court issued in September 1997. In broad terms, the injunction, as amended, prohibits Cotton and those found to have acted in active concert and participation with him from undertaking any activities with respect to positive displacement flowmeters without first obtaining leave of court. Appellants argue that the amended injunction does not comply with the specificity requirements of Rule 65(d), Fed. R. Civ. Proc., and must be vacated for that reason.

In entering the expanded injunctive provisions, the district court relied on the decision of this court in *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568, 14 U.S.P.Q.2d 1913 (Fed.Cir.1990). In that case, the district court entered a similarly broad injunction "to secure future compliance" with the court's orders. *Id.* at 1577, 903 F.2d 1568, 14 U.S.P.Q.2d at 1920. The district court considered the broad injunction to be necessary in light of the repeated past violations of the original injunction. On appeal, this court upheld the broad injunction as within the district court's discretion.

Given the district court's familiarity with the proceedings in this lengthy case, we are persuaded that the district court properly exercised its discretion when it entered an injunction similar to that used in *Spindelfabrik*. Although such broad injunctions should be used only in exceptional cases, the district court reasonably concluded that such measures were necessary in this case to compel compliance with the court's orders. Should Cotton wish to reenter the positive displacement flowmeter market with a non-infringing product, we are confident that his application for relief from the injunction will receive fair consideration from the district court.

One provision of the injunction appears to restrict the ability of Cotton or any person who has been found to have acted in active concert and participation with him to challenge the validity or interpretation of Flowdata's patent in a subsequent proceeding without obtaining prior leave of court. We interpret that provision to apply only to further contempt proceedings in the instant case. In a separate infringement action, the ability of Cotton (or any other party) to challenge the validity or construction of Flowdata's patent would be governed by the principles of issue or claim preclusion. Indeed, we have previously held that Cotton is not subject to issue preclusion with respect to the validity of Flowdata's patent. *See Flowdata, Inc. v. Cotton*, No. 95–1013, 62 F.3d 1430, 1995 WL 453390 (Fed. Cir. June 5, 1995) (unpublished opinion). We do not interpret the injunction to bar Cotton or any other party from litigating such issues in a separate infringement action in which they would not be subject to issue or claim preclusion.

Each party shall bear its own costs for this appeal.

*AFFIRMED IN PART AND REVERSED IN PART.*